Berdar Estate.

Argued March 22, 1961. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Francis Taptich,* for appellant.

*R. J. Lucksha,* for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 22, 1961:

This is a controversy over the ownership of $11,800, the amount on deposit in the First Federal Savings and

Loan Association of Homestead (Association) in a joint savings account with the right of survivorship held in the names of Mitro Berdar (Berdar) and Mary Malutinok (Malutinok).

Berdar died, intestate, on February 25, 1958, survived by a wife and one grandchild, both of whom reside within the jurisdiction of the Soviet Union. Berdar's personal representative, by petition and citation under §301(13) of the Orphans' Court Act of 1951,[1] instituted an action in the Orphans' Court of Allegheny County (before Judge Cox) to determine the title to this savings account.[2] It was averred that Berdar was the sole owner of the amount on deposit in the savings account and "That whatever color of title [Malutinok] alleges to have in the disputed fund was obtained by her through fraud, accident and mistake due to the illiteracy, ignorance and physical condition of . . . [Berdar]" and that the creation of the account was without donative intent. Upon issue joined and hearing held, Judge Cox entered a decree disallowing Malutinok's claim of ownership and awarded the amount in the savings account to Berdar's estate upon the ground the creation of the savings account was a mistake and not accompanied by donative intent on Berdar's part. From the decree of the court en banc dismissing exceptions to Judge Cox's decree, Malutinok has appealed.

Malutinok's argument is three-fold: (1) that the reception in evidence of the testimony presented by Berdar's personal representative violated the parol evidence rule; (2) that such testimony was irrelevant and incompetent; (3) that, assuming, *arguendo,* the rele-

[1] Act of August 10, 1951, P. L. 1163, as amended, 20 P.S. §2080.301.

[2] Malutinok originally instituted an assumpsit action in the Court of Common Pleas of Allegheny County against the Association which action was dismissed by reason of the exclusive jurisdiction in the orphans' court.

vancy, competency and admissibility of such testimony, such testimony lacks the quality of proof—clear, precise and convincing—necessary to sustain the decree of the court below.

Joint bank accounts have been litigated quite extensively in Pennsylvania and the applicable principles of law rather clearly defined by recent decisions of this Court. The question in this class of cases often depends upon the exact wording of the signature card or agreement, and the disposition of the cases usually is on the basis of whether a gift inter vivos was affected: *Furjanick Estate,* 375 Pa. 484, 493, 100 A. 2d 85. When a depositor creates a joint savings account with right of survivorship, and a signature card so stating is signed by both parties, a prima facie inter vivos gift to the other party and of the creation of a joint tenancy with right of survivorship is established: *Furjanick Estate,* supra; *Lochinger v. Hanlon,* 348 Pa. 29, 33 A. 2d 1. *However, where the deposit and signature card contain nothing more than a statement that a joint tenancy with right of survivorship is created, other evidence is admissible to establish the lack of donative intent on the theory that the deposit, accompanied by such a writing, and nothing more, is incomplete and equivocal: Amour Estate, 397 Pa. 262, 267, 154 A. 2d 502;* Furjanick Estate, *supra;* Fell Estate, *369 Pa. 597, 87 A. 2d 310.*

In the instant case, the language of the signature card and the deposit certificate fails to disclose with any clarity the depositor's intent. The signature card recites that the parties applied for "a savings account . . . In the joint names of . . . [Berdar and Malutinok] as joint tenants with the right of survivorship and not as tenants in common.*" At the bottom of the signature card explanation of the asterisk (*) is given: "* Joint tenants, with right of survivorship, constitute one member, as a partnership constitutes one member."

Such explanation, patently ambiguous, would seemingly equate a partnership with a joint tenancy.

An examination of the remaining wording of the signature card fails to disclose any language importing an absolute gift to Malutinok, any transfer of ownership from Berdar to Malutinok or any prohibition against unilateral revocation. Nothing on the card indicates or informs the depositors that the funds are to be *owned* by them jointly, that upon death of either of them the balance of the account will become the *absolute property of the survivor,* nor is there any stipulation or provision that the agreement is irrevocable except when agreed upon by both parties. As a matter of fact, this signature card simply and solely sets forth the creation of a joint tenancy with right of survivorship[3] which fact, as pointed out above, does not bar the admissibility of evidence—such as introduced in the case at bar—of acts and conduct on the part of the deceased depositor which reveal, manifest or indicate the depositor's intention at the time of the creation of the account.

The admission of the testimony offered by Berdar's personal representative did not violate the parol evidence rule nor was it at variance with rules recognized by this Court and the testimony itself was both competent and relevant to the issue raised.

The sole remaining question is whether the evidence produced by Berdar's representative was so clear, precise and convincing as to overcome the prima facie evidence of donative intent established by Malutinok when she proved the opening of the account and placed the signature card and passbook into evidence.

An examination and scrutiny of the evidence offered by Berdar's representative in proof of his averments

---

[3] This card simply *labels* or *names* the relationship, nothing more and nothing less.

that the account was created by Berdar by reason of fraud, accident, and mistake and without donative intent reveals the propriety of the decree entered by the court below.

Berdar, a resident of Munhall, Allegheny County, emigrated to this country in 1913 from Sucha, Austria-Hungary, leaving behind in that country a wife[4] and a son, the latter now deceased. Berdar, 72 years old, until his retirement was a laborer at Homestead Steel Works. Conversant with the Slovakian language, Berdar had great difficulty in understanding or conversing in the English language. With little educational background, he was unable to read or write. To make matters worse, Berdar was deaf which rendered conversation and understanding in any language more difficult. Berdar's business transactions were ordinarily carried out with persons who were able to converse in his native tongue.

Berdar, ill and seeking help, in February 1956 moved into the home of John Palyok, a fellow-emigrant and countryman and, on February 14, 1956, sent for one Smoley, conversant with the Slovakian language, to prepare a will. Under the will as drawn, all Berdar's estate was left to his wife and other relatives. Although Palyok testified Berdar had executed this will,[5] the fact of its execution was a matter of dispute.

Because of ill health, Berdar on February 17, 1956 was ordered hospitalized; before entering the hospital Berdar and Mrs. Palyok created with Berdar's funds a joint savings account with right of survivorship, the nomenclature of this account and the signature card

---

[4] Although he had not seen his wife for 45 years, Berdar corresponded with her and periodically sent money to her. The record shows three such remittances in late years each of $100—March 7, 1956, July 18, 1956 and January 14, 1957.

[5] This will has disappeared under somewhat suspicious circumstances.

being identical in tenor with those in the instant situation. The record is convincing and clear as to Berdar's intent in opening this account. Both Palyoks testified that, in creating this account, Berdar did not intend to give Mrs. Palyok a beneficial interest therein but simply did so to facilitate payment of bills, etc., and, in the event of his death, to provide for remittance of the balance of his estate to the legatees set forth in the will prepared by Smoley.

On January 17, 1957, Berdar left the Palyok home and moved into the Malutinok home. Malutinoks were not related to Berdar either by blood or marriage and both were of different ethnic and national origin. On January 21, 1957—four days after moving into the Malutinok home,—Berdar withdrew the funds from the Berdar-Palyok account ($12,422.92) and deposited them in an account reading "Mitro Berdar in trust for Mary Malutinok", an account which permitted withdrawals only by Berdar. On April 8, 1957, Berdar closed this account and opened the account which is the subject matter of this controversy, depositing therein $12,000. The only withdrawals from this account were by Berdar, and the only deposits were dividend deposits made by the Association.

The only testimony in regard to the creation of the savings account was given by an Association teller, D. A. Wingert, and the Association Secretary, Mary V. Lane. Wingert had a dim recollection of the transaction and the court below gave little weight to his testimony.[6] Wingert was not able to speak the Slovakian language and to insure that Berdar's intentions were correctly understood and carried out and that Berdar

---

[6] In this regard, the court below stated: "It is difficult to tell which of the events testified to by [Wingert] actually happened and were remembered by him, and which he concluded had happened by reason of the fact that they routinely happened when he opened accounts for customers of the Association".

might fully understand the implications of his actions, Wingert referred Berdar to Mrs. Lane, who was able to speak to Berdar in his native tongue.

Berdar's intent was described by Mrs. Lane: "He just wanted somebody else's name on the account" . . . "so that somebody else could draw for him" . . . "He wanted somebody on the account with him that would be able to draw the account, and he wanted Mrs. Malutinok's name on it" . . . "He didn't give a reason." Mrs. Lane further testified that Berdar was informed that the creation of a joint account would accomplish this purpose. However, she did not inform him that, if he did so, he would cease to be the sole owner and that, if he pre-deceased Malutinok, she would be the sole owner. Neither Wingert nor Mrs. Lane read the card to Berdar, nor did they explain the meaning or implication of the legal terms contained therein to him, because, as Wingert explained: ". . . he wouldn't have understood, anyway."

Berdar resided at the Malutinok home for eleven months. He then moved to the home of a Mrs. Hashtak in Munhall, Allegheny County, where he died four weeks later.

We are in full agreement with the court below "that it would be a travesty on justice to ignore the weighty, clear, precise and . . . [convincing] evidence that . . . [Berdar] did not intend to give . . . [Malutinok] a beneficial interest in . . . [this savings account] . . ., and to hold, solely by reason of his having signed . . . [the signature card], that he intended to give Mary Malutinok the interest therein of a joint tenant with the right of survivorship and not as a tenant in common". The instant account, like the Berdar-Palyok account, was created solely for Berdar's convenience and not as a means of transferring ownership, before or after death, to Malutinok.

Decree affirmed.