## Brozenic Estate.

Argued October 8, 1964. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Harry J. Schmitt,* for appellants, in No. 203, and for appellees in No. 265.

*Louis Z. Marohnic,* for appellee in No. 203.

*Martin M. Sheinman,* for appellants in No. 265.

OPINION BY MR. CHIEF JUSTICE BELL, November 24, 1964:

Matt Brozenic died testate in Allegheny County on February 15, 1960. A childless widower, over 80 years of age, his nearest kin were nephews and nieces.

Pursuant to a stipulation of facts,* the auditing Judge ruled:

(a) That the claim of Anna Jarmek to $20,711.60, which was in the account at Foster Federal Savings and Loan Association in the name of decedent or Anna

---

* The parties first brought declaratory judgment proceedings but at the audit agreed on a stipulation of facts.

There was no legal justification for any declaratory judgment proceedings in this case: *Mohney Estate,* 416 Pa. 107, 204 A. 2d 916; *Lakeland Joint School District Auth. v. Scott Township School District,* 414 Pa 451, 200 A. 2d 748.

Jarmek as joint tenants with right of survivorship, should be sustained.

(b) That the claim of Mara Bosiljevac for the amount on deposit in the joint account at Pittsburgh National Bank and of Barbara Savor for the amount on deposit in the joint account at Millvale Savings and Loan Association should be dismissed.

Brozenic's executrices appealed from the Decree which sustained Anna Jarmek's claim, and Bosiljevac and Savor appealed from the Decree which dismissed their respective claims.

Each of the claimants bases her claim on alleged gifts inter vivos from Brozenic. Repeatedly in recent years we have reviewed and reiterated the principles relating to such gifts, particularly where the subject of the gift was a jointly owned bank account or a savings association account: *Bunn Estate,* 413 Pa. 467, 198 A. 2d 518; *Fenstermaker Estate,* 413 Pa. 645, 198 A. 2d 857; *Sivak Estate,* 409 Pa. 261, 185 A. 2d 778; *Cox Estate,* 405 Pa. 444, 176 A. 2d 894; *Rogan Estate,* 404 Pa. 205, 171 A. 2d 177; *Berdar Estate,* 404 Pa. 93, 170 A. 2d 861; *Amour Estate,* 397 Pa. 262, 154 A. 2d 502; *Martella Estate,* 390 Pa. 255, 135 A. 2d 372; *King Estate,* 387 Pa. 119, 126 A. 2d 463; *Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85; *Fell Estate,* 369 Pa. 597, 87 A. 2d 310.

In *Bunn Estate,* 413 Pa., supra, the Court quoting from numerous recent decisions, said (pages 469-470) : " ' . . . " . . . ' " ' . . . "To constitute a valid gift inter vivos . . . two essential elements are requisite: An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein." ' " ' " Accord: Secary Estate, 407 Pa. 162, 180 A. 2d 572; Balfour v. Seitz, 392 Pa. 300, 140 A. 2d 441.

" '. . . In Berdar Estate, 404 Pa. 93, 170 A. 2d 861, the Court said (page 95) : ". . . When a depositor creates a joint savings account with right of survivorship, *and a signature card so stating is signed by both parties,* a *prima facie inter vivos gift* to the other party and of the creation of a joint tenancy with right of survivorship is established: Furjanick Estate, [375 Pa. 484, 100 A. 2d 85] ; Lochinger v. Hanlon, 348 Pa. 29, 33 A. 2d 1."

" 'The claimant has the burden of proving a valid inter vivos gift or in the alternative a valid gift mortis causa, and this proof can be established only by evidence which is clear, direct, precise and convincing: Secary Estate, 407 Pa. 162, 167, 180 A. 2d 572; Petro v. Secary Estate, 403 Pa. 540, 170 A. 2d 325. Cf. also Kadilak Will, 405 Pa. 238, 243, 174 A. 2d 870.'

". . . Although the decision in this class of case often depends upon the exact wording of the deposit account and the signature card and the agreement, if any, accompanying it, the law and the proof required in such cases are well settled: Sivak Estate, 409 Pa. 261, 185 A. 2d 778; Cox Estate, 405 Pa. 444, 176 A. 2d 894 . . . ."

Furthermore, a deposit accompanied by such a writing, but nothing more (i.e., not a complete agreement*) is considered so incomplete or equivocal as to permit the admissibility of parol evidence. *Furjanick Estate,* 375 Pa., supra; *Fell Estate,* 369 Pa. 597, 87 A. 2d 310.

We shall now apply these principles to the three appeals before us.

### The Claim of Anna Jarmek

For many years prior to January 7, 1959, Brozenic had been the owner of a savings account at Foster Fed-

---

* See *Furjanick Estate,* 375 Pa., supra.

eral Savings and Loan Association. On that day he transferred said account into the names of Matt Brozenic or Anna Jarmek, as joint tenants with the right of survivorship. At that time, Brozenic received from the Association two cards, (1) a proxy card for the voting of the shares represented by such account at shareholders meetings, and (2) a signature card, which pertinently read:

"Joint Savings Account    Account No. S 46345
"(subject to order of either)
"Brozenic Matt
"Jarmek Anna
"The undersigned hereby apply for a savings account in the Foster Federal Savings and Loan Association in the joint names of the undersigned *as joint tenants with the right of survivorship** and not as tenants in common. Specimens of the signatures of the undersigned are shown below and the Association is hereby authorized to act without further inquiry in accordance with writings bearing either such signatures, it being understood and agreed that any one of the undersigned who shall first act shall have power to act in all matters related to the membership and any account in said Association held by the undersigned whether the other person or persons named in the account be living or not."

Anna was not in fact decedent's niece but was the daughter of one of his nieces. Brozenic had never seen Anna, who was very many years younger. In 1959 Anna was living in Paris, France, awaiting admission to the United States.

Brozenic, on March 2, 1959 (nearly two months later), sent the two aforesaid cards to Anna Jarmek in a letter addressed to "Ivan** and Anne" containing

---

* Italics throughout, ours.
** We conjecture Anna's husband,

this paragraph: "I am sending you two cards so that you can sign them under my signature. These cards come from the bank where I have deposited money. If I die, you would be able to get this money according to my written arrangements, if anything is left after my death. For this reason I would like to see you here. But you should return these cards after having signed them for they are to be deposited at the Bank. You should sign beside the sign of the cross below my signature."

Both of these cards were signed by Anna Jarmek and returned to the decedent who delivered them to the Association on March 10, 1959.

All the money ever deposited in the account was (as above indicated) Brozenic's property, and withdrawals therefrom were made only by him, both before and after the change in the name of the account. There was no specific finding by the Court in respect to the possession of the passbook after the account was placed in the joint names. However, from the fact that the account shows withdrawals by Brozenic on July 1 and September 28, 1959, and none by Anna; and the instruction in the passbook is that "This book must accompany all transactions," it may be fairly inferred that the decedent kept possession of the passbook. However, that fact would not of itself negate the gift since the book could not be in the joint possession of both parties at the same time. *Engle Estate,* 413 Pa. 475, 198 A. 2d 505; *Cox Estate,* 405 Pa. 444, 176 A. 2d 894; *Fell Estate,* 369 Pa. 597, 87 A. 2d 310.

Brozenic bequeathed "All the rest and residue of my estate, real, personal and mixed," to three nieces and a nephew, but made no specific mention of this savings account in his will.

We agree with the Orphans' Court that the delivery to the Association of the aforesaid signature card executed by both parties made out a prima facie gift of

this account to Anna Jarmek, and that none of the above recited facts were sufficient to overcome her prima facie case.

## The Claim of Mara Bosiljevac

We believe that the pertinent facts which we have deduced from the original record may be thus summarized:

From August 21, 1943, to July 24, 1957, Brozenic had an individual savings account (No. 13299) in the First National Bank of Pittsburgh, now Pittsburgh National Bank. On that day the account had a balance of $2,160.28. Brozenic then deposited an additional $1,010 and changed the account from his own name to a joint account in the name of himself *or* Mara Bosiljevac with right of survivorship, each tenant having the right to withdraw. Brozenic was given by the bank a signature card for the creation of such an account, which he was instructed should be signed by both himself and Mara. Brozenic immediately signed it but the *card* was never returned to the bank and was not in its files or in his files at his death. However, Mara produced a letter which had been sent by Brozenic to her and her husband dated July 31, 1957. This letter pertinently read: ". . . I am writing you few words and sending you two forms, signed your name and last name under my where it is marked M.B. and little cross, so that you know what it is, I have some money at this bank and I have it registered with me so that after my death nobody will be able to claim it except you as much as there will be left. There is quite a bit now, but this is not only for your self but all four of you in equal shares, but after my death four of you do not forget Toneta, all of you must help him from your shares, I have picked you as the mother because you are honest and smarter than others. If you

want, you can tell other sisters and read them this letter, even though one of them wrote my why did I choose you as most trustworthy. Keep this letter which you will need in case of my death. *These cards return to me because I have to put them in the bank* (Peoples Trust National Bank and Trust Company, Fifth Avenue, Box 506, Pittsburgh 30, Pa.). This address is not necessary for you now, just so that you know. These forms send to me and I myself will return them to the bank, . . . ."

Brozenic made no deposits in or withdrawals from the account after July 24, 1957. He kept possession of the passbook, so that, practically, claimant could not have used the account in decedent's lifetime, even if she had signed the signature card.* Brozenic made a will on June 18, 1959, in which he revoked all previous testamentary dispositions. At the time of his death there was $3,354.09 on deposit in this account.

It is clear that Mara failed to make out a prima facie case showing a gift inter vivos to her. She did not produce a signature card or a contract signed by both co-tenants, and Brozenic's intentions, so far as they are disclosed in his letter to Mara, would seem to be clearly tentative and ambiguous or at best for Mara testamentary. If Brozenic intended a testamentary gift,—and the evidence to prove such a gift is certainly insufficient—such a gift was revoked by the execution two years later of a will containing a clause of revocation. For the above reasons, the Court below properly dismissed Mara's claim.

### The Claim of Barbara Savor

This claim concerns Account No. 9166 at Millvale Savings & Loan Association. Brozenic had an account in that Association in his name prior to November 18,

---

* As shown above, this circumstance was not controlling.

212

1959, when he deposited $1,010.24. On that date he changed the name of this account to an account in the name of himself *or* the claimant, with right of survivorship. It was stipulated that the bank handed Brozenic a signature card for the creation of such an account which he immediately signed; that he was instructed by the Association to obtain the signature thereon of (Barbara) the other tenant; but that no signature card was ever filed with the Association, nor was there any evidence that Barbara had ever signed the card. At Brozenic's death there was $1,708.38 in the account. Though the fact is not controlling, Brozenic kept possession of the passbook.

For the reasons stated above with respect to the claim of Mara Bosiljevac, this claim of Barbara Savor was properly dismissed by the Orphans' Court.

Decree affirmed. Each party to pay own costs.