## Slavinski Estate.

Argued January 6, 1966. Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Fred T. Cadmus, III,* with him *William J. C. O'Donnell,* and *O'Donnell & O'Donnell,* for appellant.

*Joseph F. Harvey,* with him *MacElree, Platt, Marrone & Harvey,* for appellee.

OPINION BY MR. JUSTICE JONES, March 22, 1966:

The essential facts of this controversy are set forth in the opinion of the court below.

"Katherine Slavinski, wife of Henry Slavinski and mother of Henry J. Slavinski, Jr., on July 6, 1955, in company with Henry Slavinski and Henry J. Slavinski, Jr., caused to be opened a savings account No. 9327 at Phoenixville Trust Company, Phoenixville, Pennsylvania with funds previously in her name alone in the following names, to wit: [The signature card provided]:

'TITLE OF ACCOUNT—HENRY J. OR KATHERINE (14) SLAVINSKI OR HENRY SLAVINSKI—S.F. NO. 9327—

" 'In receiving items for deposit or collection, this bank acts only as depositor's collecting agent and assumes no responsibility beyond the exercise of due care. All items are credited subject to final payment in cash or solvent credits. This bank will not be liable for default or negligence of its duly selected correspondents nor for losses in transit, and each correspondent so selected shall not be liable except for its own negligence. This Bank or its correspondents may send items, directly or indirectly, to any bank including the payor, and accept its draft or credit as conditional payment in lieu of cash; it may charge back any item at any time before final payment, whether returned or not, also any item drawn on this bank not good at close of business on day deposited.

" 'AUTHORIZED SIGNATURE
(s) Katherine Slavinski (deceased)

506

" 'AUTHORIZED SIGNATURE
   (s) Henry J. Slavinski
   (s) Henry Slavinski
" 'JOINT ACCOUNT—PAYABLE TO EITHER OR
      SURVIVOR

" 'It is agreed and understood that any and all sums may from time to time stand on this account, to the credit of the undersigned depositors, shall be taken and deemed to belong to them as joint tenants and not as tenants in common, while both joint tenants are living, either may draw and in case of the death of either, this Bank is hereby authorized and directed to deal with the survivor as sole and absolute owner thereof.

" 'It is especially agreed that withdrawals of funds by the survivor shall be binding upon us and upon our heirs, next of kin, legatees, assigns and personal representatives.

" 'Payment to or on check of the survivor shall be subject to the laws relating to inheritance and succession taxes and all rules and regulations made pursuant thereto.

" 'Witness our hands and seals this .............
day of ..................... 19 ................
..................... (1) (s) Katherine Slavinski
                  Seal
(s) Henry Slavinski  (2) (s) Henry J. Slavinski
                  Seal' "[1]

Katherine Slavinski, a Chester County resident, died June 17, 1956, survived by her husband, Henry, a son, Henry J. and *six other children.*

Henry Slavinski died December 29, 1960, leaving to survive him, inter alia, the aforesaid son, Henry J.

---

[1] On the actual signature card there are additional marks which seem to indicate an endeavor to obliterate some writing in front of Henry Slavinski's name.

Slavinski, Jr. who thereby became the sole surviving name on the savings account and the sole possessor of its funds.

On May 18, 1962, Raymond Slavinski, the executor of the estate of Henry Slavinski, petitioned. the Orphans' Court of Chester County for a citation to require Henry J. Slavinski, Jr. to show cause why he should not account for all the funds under his control in the aforesaid savings account since July 6, 1955, and to enjoin him from making any further withdrawals from the said account. After a hearing, the court entered a decree dismissing the citation. From that decree, Raymond Slavinski, as executor of the Henry Slavinski Estate, and Richard J. Slavinski,[2] Administrator of the Katherine Slavinski Estate, have appealed to this Court.

Appellants' theory is that the name of Henry J. Slavinski, Jr., the appellee, had been included on this joint savings account on July 6, 1955, pursuant to a family agreement in which appellee had promised to use the account "to take care of Pop" who neither spoke nor read English. This agreement was evidenced in March 1959 when Henry Slavinski, appellee's father, surrendered the pass book to appellee immediately before entering the hospital for the express purpose of having appellee pay the expected hospital bills. Appellee never relinquished control of the pass book after that, even though his father recovered from that illness and lived until December 29, 1960, and even though his father and, later, his father's executor demanded its return.

The lower court based its decree in part upon the inadmissibility of certain parol evidence which, if received in evidence, would have established the absence of any donative intent on the part of appellee's moth-

---

[2] Richard J. Slavinski intervened in this action on April 7, 1965, to support Raymond Slavinski's position.

er, Katherine Slavinski, in the creation of the joint account and the absence of any donative intent on the part of appellee's father, Henry Slavinski, in permitting appellee to take possession of the pass book. The court below stated: "We have taken occasion to review Amour Estate [397 Pa. 262, 154 A. 2d 502 (1959)] and are of opinion it completely justifies the exclusion of parol evidence in the instant estate inasmuch as the language on the signature card there involved and the language on the signature card here involved are substantially identical."

We do not agree with the court below that the instant signature card is as clear in revealing donative intent as that in *Amour Estate,* supra, because of the ambiguity here arising from the crossed out markings in front of the name of appellee's father, Henry Slavinski.[3] However, we need not determine that question because this parol evidence was clearly admissible for another reason. Appellee *admitted* in open court that the signature card did not reflect the entire or whole agreement between the parties: "By the Court: Q. What, if any, understanding was there between you and your mother, or between you and your mother and father, when your name was first added to this pass book? A. That was to take care of pop."

"By Mr. O'Donnell: Q. There is no doubt in your mind at that time [March 1959 when appellee's father first surrendered the pass book to appellee], this pass book was in your possession so that it would be a convenience in paying your father's bills for him, is that correct? A. That is correct."

. . .

"By the Court: Q. Was that in accordance with the understanding you had with your father, when he turned the pass book over to you? A. Yes."

---

[3] See footnote 1, supra.

In addition thereto, a letter from appellee's counsel, Joseph F. Harvey, to William L. Cremers, Jr., then appellant Raymond Slavinski's counsel, dated April 10, 1959, (shortly after appellee's father's return from the hospital), was read into evidence at the trial: "Dear Bill: Henry Slavinski, Jr., has consulted me about your letter of April 2nd, 1959. Mr. Slavinski has the passbook, and he intends to keep it for the benefit of his father.

"As I understand the situation, this account was originally owned solely by the mother who, prior to her death, added the names of her husband and her son, Henry, Jr., *the latter being added for the express purpose of preserving the account for the use and benefit of his father.*

. . .

"I have advised Mr. Slavinski, Jr., that he is at least a half owner of this account, and he has advised me that he has and will use the funds only for the maintenance, support and benefit of his father . . . ." (Emphasis supplied).

Where a party, such as appellee, seeking to have a written agreement enforced according to its terms, *admits* in his own trial testimony that the agreement in writing did not *fully* and *completely* state the entire agreement between the parties, then parol evidence is admissible to explain and supplement such written agreement. Cf. *Dunn v. Orloff,* 420 Pa. 492, 218 A. 2d 314 (1966) and cases cited therein. ". . . 'if the matter proposed to be shown by parol [evidence] is the subject of a covenant in the agreement, which is complete, such evidence to alter its terms cannot be received' (Cridge's Est., 289 Pa. 331, 338, 137 A. 455), *unless it is admitted that the whole of the agreement is not set forth in the writing*: Ward v. Zeigler, 285 Pa. 557, 132 A. 798.": *Allinger v. Melvin,* 315 Pa. 298, 304, 172 A. 712 (1934). (Emphasis supplied).

The introduction of the parol testimony into evidence to explain the *full* understanding between the parties in adding the names to the savings account and in having appellee sign the card would have resulted in a record containing evidence sufficiently clear, precise and convincing to rebut the prima facie evidence of a valid inter vivos gift to appellee: *Berdar Estate,* 404 Pa. 93, 95, 170 A. 2d 861 (1961); *Fenstermaker Estate,* 413 Pa. 645, 648, 198 A. 2d 857 (1964). In refusing such parol evidence, the court below erred.

Decree vacated and remanded for proceedings not inconsistent with this opinion. Costs on appellee.