Dunn *v.* Orloff, Appellant.

Argued November 17, 1965. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Melvin Lashner*, with him *Stephen A. Cozen*, and *Adelman & Lavine*. for appellants.

*Gerald A. Gleeson, Jr.,* with him *Robert L. Trescher, Edward D. Slevin,* and *Montgomery, McCracken, Walker & Rhoads,* for appellee.

OPINION BY MR. JUSTICE JONES, March 22, 1966:

This appeal lies from a judgment entered on a directed verdict by the Court of Common Pleas No. 7 of Philadelphia County.

This is an action of assumpsit upon a $25,000 judgment note—dated April 8, 1960 and payable upon demand—which was given by Michael Orloff and Miriam Orloff to Howard Dunn. Judgment by confession was originally entered on the note on April 12, 1960; thereafter, on January 31, 1961, the judgment was marked to the use of The Federation of Jewish Agencies and, on the same day, by it to the use of Russell C. Hughes.[1]

Approximately a year later, damages were assessed on the judgment and an execution issued thereon. Within a short time thereafter, the appellants petitioned to open the judgment; the gravamen of that petition was that, *prior to* the execution of the judgment note, the appellee had orally agreed with appellants that, if and when Orbros, Inc.—a corporation owned by the husband-appellant and his cousin—repaid $5,000 to the appellee, the latter would return the note to appellants; that more than $5,000 had been repaid on account of the indebtedness; that, despite the oral agreement, appellee had not returned the note. By way of answer, the appellee (a) denied that he had ever entered into any such agreement with appellants; and (b) pointed out that, when the note was given, Orbros, Inc., then virtually insolvent, was already indebted to him in the amount of $20,000, and that the note was given to se-

---

[1] In this opinion, Orloffs are termed appellants and Howard Dunn—the legal plaintiff—the appellee.

cure the existing indebtedness of $20,000 as well as the additional $5,000 then advanced to appellants.

Prior to trial—and 16 months after the judgment was opened—appellee filed a motion for judgment on the pleadings asserting that, under the parol evidence rule, the introduction of any evidence of the alleged oral agreement would be barred. This motion was denied by the court below on the ground that this question could have been raised by the appellee in opposition to the appellants' petition to open the judgment; that, having failed to do so at that time and having failed to appeal the adverse ruling, appellee could not in this manner collaterally attack the order opening the judgment. On appeal, we affirmed: *Dunn v. Orloff*, 414 Pa. 636, 201 A. 2d 432 (1964).

The case was then set for trial. A jury trial was held on September 28 and 29, 1964. The appellee presented his own testimony in which he identified the note, admitted payments on account of principal totaling $12,933.48, and stated the amount remaining due on the principal was $12,066.52. Counsel for the parties stipulated that, if this amount was found to be due, the interest thereon amounted to $3,245.89 and, further, that the appellee would be entitled, in accordance with the terms of the note, to a collection fee of $1,899.98.

In presenting their case, appellants presented three witnesses—the husband-appellant, Walter Orloff and Sidney Orlofsky—who would testify that, prior to execution and delivery of the judgment note, appellee orally agreed to return the note to appellants when $5,000 had been repaid on the note. On objection, this testimony was excluded on the ground that its reception into evidence would violate the parol evidence rule. Thereupon, appellants offered no additional testimony and a verdict was directed in favor of appellee in the amount of $17,122.39. Thereafter, motions for judg-

ment n.o.v. and a new trial were denied, judgment was entered on the verdict, and this appeal taken.

The sole issue is whether the parol evidence rule barred testimony as to the prior oral agreement between the parties as to the return of the note. The crux of the controversy is whether, either by way of pleadings or his trial testimony, the appellee *admitted* that the note did not constitute the entire agreement between the parties so as to bring the proffered parol testimony within the exception to the parol evidence rule recently enunciated in *Boyd Estate,* 394 Pa. 225, 146 A. 2d 816 (1958).

In 1924, the present statement of the Pennsylvania parol evidence rule was enunciated by this Court in the landmark case of *Gianni v. Russell & Co., Inc.,* 281 Pa. 320, 126 A. 791 (1924). In *Gianni,* it was held that if a written agreement was intended by the parties to encompass the entire understanding between the parties, then evidence of a contrary nature, based upon an oral agreement at the time of the execution of the written agreement, was barred in the absence of fraud, accident or mistake. As later stated by former Chief Justice STERN in *O'Brien v. O'Brien,* 362 Pa. 66, 71, 66 A. 2d 309, 311 (1949): "That principle (the Parol Evidence Rule) is to the effect that, in the absence of any allegation of fraud, accident or mistake, 'the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence'." See also: *Speier v. Michelson,* 303 Pa. 66, 154 A. 127 (1931); *United Refining Co. v. Jenkins,* 410 Pa. 126, 189 A. 2d 574 (1963).

In *Gianni,* however, the court provided for an exception by saying: "The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself '. . . it is conclusively presumed

that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing.' " (281 Pa. at 323). From this language has developed an exception to the Rule, i.e., that parol evidence is admissible to explain and supplement a written agreement where such evidence *clearly* shows that the writing in question was not intended to and did not properly state the entire agreement between the parties. *Boyd Estate*, supra; *Allinger v. Melvin*, 315 Pa. 298, 172 A. 712 (1934) ; *Universal Film Exchanges, Inc. v. Viking Theatre Corp.*, 400 Pa. 27, 161 A. 2d 610 (1960). As stated in *Boyd*: ". . . the parol evidence rule has never barred the introduction of clear, precise and convincing evidence to show that the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that *the agreement as written did not express what the parties intended* and that what the parties intended was omitted from the written agreement by mistake or accident." (Emphasis supplied) (394 Pa. at 233). The appellants urge that this exception is presently applicable because the appellee has *admitted* that the note does not contain the entire agreement between the parties, an *admission* which appellants submit is to be found both in appellee's pleadings and trial testimony. Before examining the trial testimony and pleadings to ascertain if, *in fact*, such an *admission* exists, it must be noted that the burden was upon appellants to show that the appellee has *admitted* that the note did not express the entire agreement between the parties and such proof must be by "clear, precise and convincing" evidence: *Universal Film Exchanges, Inc. v. Viking Theatre Corp.*, supra. By such qualitative evidentiary standard must appellants' evidence be weighed.

The pertinent portions of the pleadings—appellants' petition to open judgment and appellee's answer thereto—are: "5. That said Howard M. Dunn agreed that

upon such repayment of the sum of five thousand dol-. lars by Orbros, Inc., the said judgment note would be returned to the defendants herein."

Appellee's answer reads as follows: "5. Denied for the reasons set forth in Paragraphs Three and Four hereof which are made part hereof by reference thereto."[2]

From such pleadings, appellants argue that, whereas the writing on the note shows a loan to appellants in their individual capacities, the pleadings show the loan was made to Orbros, Inc.—an Orloff family-owned corporate entity—as a corporate entity and, therefore, the pleadings admit that the note sued upon neither reflected nor contained the true understanding and agreement of the parties.

In further substantiation of their position, appellants point to the following trial testimony of the appellee: "Q. And at the time this Note was executed you advanced $5,000 to the corporation, is that right? A. I considered that I advanced it to Mr. Michael Orloff. Q. Did you give Mr. Orloff $5,000 in cash in his.

---

[2] Paragraphs Three and Four of the Answer read as follows: "3. Denied as stated. On the contrary, in April of 1960, by reason of the actions and financial maneuvering of Michael Orloff, President of Orbros, Inc., he and the corporation were, inter alia, in serious financial difficulties. That at the time Orbros, Inc. was indebted to the plaintiff in the sum of Twenty Thousand ($20,-000.00) Dollars and the additional Five Thousand ($5,000.00) Dollars loaned to the corporation, at the special instance and request of the defendants, was for the purpose of helping the financial situation of the corporation and the personal positions of the defendants. 4. Denied. Said Judgment Note was given to secure and guarantee the payment of the full Twenty-Five Thousand ($25,-000.00) Dollars which would become due to plaintiff by the additional Five Thousand ($5,000.00) Dollar loan made at the request of Michael and Miriam Orloff jointly. That plaintiff also furnished additional consideration for the said Twenty-Five Thousand ($25,-000.00) Dollar note aforesaid, all of which is known to defendants."

hand? A. I don't recall whether I gave it to him or I gave it to Mrs. Orloff or I gave it to the corporation, but I advanced $5,000. Q. Isn't it a fact you made a check payable to Orbros, Inc., for $3,000 at one time and $2,000 at another time subsequent to that? A. It's possible. Q. So you paid $5,000 to the corporation? You loaned an additional $5,000 to the corporation? A. I didn't look at it that way. Q. For which you received that Note? A. I didn't look at it that way. Q. Is that a correct statement that I just made? A. If you want to say it's a correct statement."

"A. At the time this loan was made the corporation owed me $20,000, prior to the time this loan was made. Q. And at the time this Note was signed you advanced another $5,000, is that correct? A. That's correct."

"Q. Pursuant to all your discussions with Mr. Orloff, you received $12,900, is that correct, your discussions, this agreement, all your dealings? A. *I will say that I received the sum mentioned in return on account of this Note.* Where I got it from, who paid me and what the legal technicalities, I'm not familiar. The only thing I know is, we made an agreement whereby I would help him under these circumstances, desperate circumstances, and for that he gave me this $25,000 Judgment Note, and I received back on account of this $25,000 the $12,000 and some odd dollars that I testified to before, and there is still due me—not due me— but there is still due on this Note $12,066.62. Q. And the payments, you stated, came from Orbros, Inc., or from Liberty Real Estate Trust Company, is that correct? A. The mechanics of the payments? Q. Yes. A. I believe that's correct."

"Q. To whom was the loan made? A. Which loan are you referring to? Q. The additional $5,000. A. I consider it was made to Michael Orloff and his wife. You may take exception to that. Q. I just want you to read Paragraph 6 of your Answer, which states, 'The

making of the additional loan of $5,000 to Orbros, Inc., making a total indebtedness of $25,000 aforesaid, is admitted'. A. That's correct. Q. So then it was made to Orbros, Inc., is that correct? A. Well, you see, you are a lawyer and I'm a layman. I considered that I made the loan of $25,000 to Michael and Miriam Orloff. Now the mechanics of who got the money, where it was placed, what obligations were signed, you could be absolutely correct, I'm not taking exception, but in my mind I made the loan to them to secure me for other considerations that had previously been made. Q. This is your sworn statement. A. It's probably absolutely technically correct. Q. And the sworn statement says 'making of the additional loan of $5,000 to Orbros, Inc., making a total indebtedness of $25,000 is admitted'. A. *That's admitted. I admit it.*"

Assuming, arguendo, that the pleadings and testimony, supra, show a corporate loan rather than the individual loan depicted on the face of the note, we fail to see how such variance can be deemed an *admission* by appellee that the note did not constitute an integration of the parties' understandings and undertakings. Paragraph 5 of appellee's answer expressly denies appellants' allegation of any agreement as to the return of the note. A discrepancy between the alleged admission of a corporate loan and the language of the note, indicating the loan was an individual loan does not involve the existence or nonexistence of the alleged prior oral agreement or the integrity of the note. To *whom* the loan was made has nothing to do with a promise to return the note. We find neither an express or implied *admission* that this note did not integrate the understandings and undertakings of the parties.

In addition to reliance upon the foregoing pleadings and testimony, appellants, through the medium of two proffered witnesses, sought to prove that, subsequent to the execution of the judgment note, the appellee ad-

*mitted* that the note did not contain the true agreement between the parties. Walter Orloff[3] was offered as a witness to testify to an alleged conversation with appellee, after more than $5,000 had been paid on account, in which appellee stated there had been an oral agreement to return the note upon such payment but that he did not intend to honor such agreement. Sidney Orlofsky[4] was offered as a witness to testify to two alleged telephone conversations, one with the husband-appellant on the evening the note was executed and the other with appellee six to eight months later. During the first conversation, Orlofsky claimed to have "advised his brother to sign the note only if Howard Dunn [plaintiff] agreed to return the note upon payment by Orbros, Inc., to [plaintiff] of the first five thousand dollars".

The proffered testimony is similar to that offered and rejected in *Universal Film Exchanges, Inc. v. Viking Theatre Corp.,* supra. In *Universal,* defendant offered the testimony of two of its corporate officers that plaintiff's sales manager had admitted that the two film licenses sued upon did not reflect the true agreement between the parties and that, in fact, an adjustment was to be made on the basis of four films, including the two in issue. In *Universal,* in upholding the rejection of such testimony, we adopted the language of the opinion in the court below wherein it was said, inter alia: ". . . It is clear that the defendant's offer of proof fell far short of any acknowledgment by the plaintiff that the written contracts sued upon did not express the agreement of the parties to the contracts. Assuming, arguendo, that the offer as to the proposed testimony of [the two witnesses] met the

---

[3] Walter Orloff is the cousin of Michael Orloff, was a fifty-percent partner in Orbros, Inc., and was active in the management of that business.

[4] Sidney Orlofsky is the brother of Michael Orloff.

standard of clear, precise and convincing evidence, nevertheless, the offer still would have been insufficient to prevent the application of the parol evidence rule, for the reason that the only evidence of any admission by plaintiff that the written contracts did not reflect the true agreement of the parties would have been the testimony of two officers of the defendant corporation to the effect that an officer of the plaintiff corporation had, subsequent to the date of the execution of the written contracts, orally made such an admission to them. No case in Pennsylvania has ever gone so far as to permit the terms of a written contract to be altered or varied by such testimony." (400 Pa. at 38) Further, the court said: "In this case the parol evidence rule would have been almost completely nullified had the Trial Judge permitted [the two witnesses] to have testified that, after the execution of the written contracts, [plaintiff's sales manager] had admitted that the contracts did not reflect the true agreement of the parties." (400 Pa. at 39) *Universal* is controlling on the admissibility of the testimony of these two witnesses and the refusal of such evidence was proper.

Moreover, the testimony of these two witnesses would not meet the qualitative evidentiary standard of clarity and conviction required to establish an admission. In *Boyd Estate,* supra, there was not only the testimony of two witnesses—who were not parties to the written contract—to the effect that the party seeking to enforce the contract had made a subsequent admission that the contract did not reflect the true agreement between the parties, but, *in addition,* the party seeking to enforce the contract had also made such an admission in his pleadings. In contrast, here we have no *admission* by the appellee, either in his pleadings or his testimony. Moreover, the testimony offered by appellants can hardly be deemed disinterested: the one witness—Walter Orloff—is a cousin of the husband-

appellant, as well as his active business partner and as such obviously enjoyed some of the benefits of the loan; the second witness—Sidney Orlofsky—is a brother of the husband-appellant and also appears to have acted as his brother's counsel at the time of this transaction.

Appellants also offered the testimony of one of the appellants, Michael Orloff, which offer related to alleged telephone conversations between the appellee and himself, *prior* to appellants' execution of the note. There is no question that such testimony is properly barred by the parol evidence rule. See: *Speier v. Michelson, supra; Yorkshire Worsted Mills v. Braman,* 115 Pa. Superior Ct. 333, 175 A. 726 (1934).

Appellants next contend that parol evidence is always admissible where there is an allegation of fraud, accident or mistake. To invoke the instant application of this principle, they contend that the appellee's conduct in entering judgment on the note and his assignment thereof to the use of The Federation of Jewish Agencies, a charity, was part of a fraudulent design on the part of appellee to obtain a federal income tax deduction. In line with such alleged design, it is contended that appellee, aware that his chances of total repayment of the note were slim, conceived a plan to obtain a charitable deduction. Assuming, arguendo, that appellee did conceive such plan, it is of no moment, since to render parol evidence admissible the fraud involved must be material and relevant to the execution of the written instrument. Here the alleged fraud upon which appellants base their contention occurred some months after the execution of the judgment note.

Lastly, appellants submit that the trial judge, by reason of prior decisions rendered in this case, was precluded from determining the applicability of the parol evidence rule. The first order, made by Judge MILNER, granted the petition to open the judgment;

even though no written opinion was filed, it is evident from the pleadings that the question of the parol evidence rule was not raised by appellee and it was not within Judge MILNER's province to anticipate problems which appellants might face at trial. Judge MILNER's order opening the judgment left the parties as if no judgment had been entered, and the proceedings thereafter were de novo: *Poelcher v. Zink,* 375 Pa. 539, 101 A. 2d 628 (1954).

The second order, made by Judge SPORKIN, denied appellee's motion for judgment on the pleadings. In that motion, *for the first time,* the issue of the parol evidence rule was raised; Judge SPORKIN ruled that, inasmuch as appellee *could have* but *did not* raise this issue at the time of the hearing on the petition to open the judgment, and, in so doing, stated: "The question of the parol evidence rule should have been raised, if at all, in use-plaintiff Hughes' answer to the petition to open judgment and in the argument on that rule before Judge MILNER." However, Judge SPORKIN, with reference to the point now raised by appellants, continued: "The case is presently ready for disposition by the trial court, before which the parol evidence issue, in our view, may properly be raised. Use-plaintiff Hughes' rights clearly will be preserved, notwithstanding our denial of his motion." (R. 26a) Judge SPORKIN clearly did not pass upon the parol evidence issue. The third order is that of our Court on the appeal from Judge SPORKIN's order. We simply affirmed Judge SPORKIN on the ground that the issues, including the parol evidence issue, could have been raised at the hearing to open the judgment and that orderly procedure precluded the appellee being given another opportunity *prior* to trial to raise such issues, particularly when the earlier order was not appealed.

We have carefully considered all of appellants' contentions and find no merit therein. Certainly, on the

posture of the instant record, the court below correctly refused the proffered parol evidence. To have done otherwise would clearly have violated the parol evidence rule.

Judgment affirmed.