Zabek Estate.

Argued March 19, 1970. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Saul Davis,* for appellants.

*J. Craig Kuhn,* with him *James L. Bruggeman, and Wilner, Wilner & Kuhn,* for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, October 9, 1970:

This appeal involves the ownership of two bank accounts totaling $33,865.00.

*John* Zabek died testate on September 14, 1965, leaving an estate of approximately $22,000.* Decedent's will, dated July 14, 1962, was duly probated and *Walter* Zambek,** testator's eldest living son, was appointed executor of the estate. Testator's will provided that his estate be distributed equally among his nine children and that the issue of any deceased child take per stirpes. On January 8, 1967, Walter Zambek died, before any account had been filed in his father's estate. Walter was survived by his widow and three children, two of whom are the present appellants. After Walter's death, two of his brothers, Michael and Frank Zombek, were appointed administrators d.b.n.c.t.a. of the estate of their father, John Zabek.

On May 24, 1968, Michael and Frank Zombek in their fiduciary capacity filed a petition in the Orphans' Court which alleged that a part of the funds of the *testator, John* Zabek, which the deceased executor, Walter Zambek, held in his fiduciary capacity for the benefit of all the testator's beneficiaries, was distributed without administration to *some* of the beneficiaries under their father's aforesaid will. The administrators asked that a citation be issued directing these distributees to account for the funds in question. On November 29, 1968, the Orphans' Court issued the requested citation.***

The testimony presented at the hearing showed that on July 12, 1962—two days before he executed his will and over three years before his death—the testator,

---

* This amount does not include the money on deposit at testator's death in either of the two bank accounts.

** The family name was Zabek. However, various offspring subsequently changed the name to *Zambek* or *Zombek*.

*** No citation was issued against the Estate of Walter Zambek (the deceased executor).

John Zabek, accompanied by his eldest living son, Walter Zambek, and by Walter Tafelski, went to the Bridgeville Trust Company. After a discussion with the President of said Company, *John Zabek and Walter Zambek opened a joint checking account* in the amount of $18,865 *and a joint savings account* in the amount of $15,000. *All* of the money deposited in each of these accounts *was the sole personal property of John Zabek.* Both John Zabek (the testator) and Walter Zambek signed the hereinafter quoted bank signature cards for each of the above-mentioned accounts:

"ZABEK, John or Walter Zambek

It is agreed and understood that any and all sums that may from time to time stand on this account, to the credit of the undersigned depositors, *shall be taken and deemed to belong to them as joint tenants** and not as tenants in common; and in case of the death of either, The Bridgeville Trust Company is hereby *authorized and directed to deal with the survivor as sole and absolute owner thereof.*"

The testimony showed that the testator requested joint accounts and that before the bank signature cards were signed, William McDivitt, Jr., President of the Trust Company, clearly explained to the testator and his son, Walter, that upon the death of either of them the money remaining in each account would be the sole property of the survivor** Tafelski in part of his testimony corroborated McDivitt's testimony, but Tafelski's testimony as a whole was so equivocal as to be of very little value.

The Orphans' Court permitted the petitioners to introduce, over appellants' objection, parol evidence to prove that their father, the decedent, lacked the dona-

---

\* Italics throughout, ours, unless otherwise noted.

\*\* No objection was made to McDivitt's testimony.

tive intent required to establish an inter vivos gift, because the money in question was deposited for the purpose of enabling Walter to take care of and manage their father's financial affairs until the latter's death, at which time it had been orally agreed between their father and their brother Walter that whatever money was left in the accounts was to be distributed to decedent's children equally.

The Orphans' Court held (1) that the money remaining in these bank accounts was part of the testator's estate and (2) that Mary Zambek, Walter's wife, and Harry Zambek, one of Walter's children, were in possession of the above-mentioned funds. Accordingly, the Orphans' Court ordered Mary Zambek and Harry Zambek to deliver this money to the administrators of the estate of the testator, John Zabek. The Court en banc affirmed, one Judge dissenting.

Appellants contend in this appeal that the Orphans' Court erred because (1) it did not consider the opening of the aforesaid accounts with the accompanying signature cards prima facie evidence of a gift inter vivos; (2) it did not hold that the parol evidence rule was applicable to the present factual situation and barred the present claim; (3) it did not hold that the testimony of Stanley and Frank Zombek was inadmissible because it violated the "Dead Man's" Act, Act of May 23, 1887, P. L. 158, 28 P.S. 322; and (4) in the alternative, that even if the aforesaid oral testimony of the petitioners (appellees) as to the oral agreement was admissible, it was insufficient to overcome the prima facie evidence of a gift inter vivos to the joint tenant.

This Court, in a score of cases, has recently reviewed and reiterated the principles applicable to inter vivos gifts, particularly where the subject matter of the gift is a jointly-owned bank account. See, inter alia, *Slavinski Estate*, 420 Pa. 504, 218 A. 2d 125; *Brozenic*

*Estate,* 416 Pa. 204, 204 A. 2d 918; *Bunn Estate,* 413 Pa. 467, 198 A. 2d 518; *Fenstermaker Estate,* 413 Pa. 645, 198 A. 2d 857; *Sivak Estate,* 409 Pa. 261, 185 A. 2d 778; *Cox Estate,* 405 Pa. 444, 176 A. 2d 894; *Rogan Estate,* 404 Pa. 205, 171 A. 2d 177; *Berdar Estate,* 404 Pa. 93, 170 A. 2d 861; *Amour Estate,* 397 Pa. 262, 154 A. 2d 502; *Martella Estate,* 390 Pa. 255, 135 A. 2d 372; *King Estate,* 387 Pa. 119, 126 A. 2d 463; *Furjanick Estate,* 375 Pa. 484, 100 A. 2d 85; *Fell Estate,* 369 Pa. 597, 87 A. 2d 310. The principles with respect to inter vivos gifts are well settled; their application, especially when dependent upon a bank's signature card,* is sometimes difficult.

In *Brozenic Estate,* 416 Pa., supra, this Court said (pages 206-207) : "In Bunn Estate, 413 Pa., supra, the Court quoting from numerous recent decisions, said (pages 469-470) : ' ". . . '. . . " ' ". . . 'To constitute a valid gift inter vivos . . . two essential elements are requisite: An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein.' " ' " ' Accord: Secary Estate, 407 Pa. 162, 180 A. 2d 572; Balfour v. Seitz, 392 Pa. 300, 140 A. 2d 441.

" ' ". . . In Berdar Estate, 404 Pa. 93, 170 A. 2d 861, the Court said (page 95) : '. . . When a depositor creates a joint savings account with right of survivorship,

---

* All these bank deposit cards are drawn primarily for the benefit of the bank. In *Bunn Estate,* 413 Pa. 467, the Court, in a footnote, said (page 471) : "Banks can avoid a large amount of litigation by modernizing their signature card so that it will clearly set forth the *exact* status and the rights of the parties. Note the clearly worded signature card in Cox Estate, 405 Pa., supra." (Emphasis in original)

*and a signature card so stating is signed by both parties, a prima facie inter vivos gift\** to the other party and of the creation of a joint tenancy with right of survivorship is established: Furjanick Estate, [375 Pa. 484, 100 A. 2d 85] ; Lochinger v. Hanlon, 348 Pa. 29, 33 A. 2d 1.'. . .'"

' . '' ''. . . Although the decision in this class of case *often depends upon the exact wording of the deposit account and the signature card and the agreement, if any, accompanying it,* the law and the proof required in such cases are well settled: Sivak Estate, 409 Pa. 261, 185 A. 2d 778; Cox Estate, 405 Pa. 444, 176 A. 2d 894. . . .' "

We are in agreement with appellants' first contention, namely, that the bank signature cards executed by both joint tenants established a prima facie gift to Walter Zambck.\*\* While the facts and circumstances existing at the time of the opening of the account and the signature of the deposit cards were admissible, we must now consider whether the evidence introduced in the lower Court by appellees, i.e., Walter's subsequent statements to his brother, was admissible, and, if so, whether it was sufficient to overcome the prima facie gift.

Appellants' second contention is that parol evidence, i.e., Walter's subsequent statements, was not admissible to contradict the prima facie gift because of the parol evidence rule.

In *Dunn v. Orloff,* 420 Pa. 492, 218 A. 2d 314, this Court said (pages 495-496) : "In 1924, the present state-

---

\* Italics in *Brozenic Estate,* 416 Pa. 207.

\*\* *Hosfeld Estate,* 414 Pa. 602, 202 A. 2d 69, relied upon by the Orphans' Court and the appellees, is clearly distinguishable. In *Hosfeld,* we expressly stated that no bank signature cards had been executed in connection with the establishment of the disputed bank accounts. Therefore, we were not presented with evidence of a prima facie gift, and, accordingly, the burden of proof was upon the party claiming an inter vivos gift of the account.

ment of the Pennsylvania parol evidence rule was enunciated by this Court in the landmark case of Gianni v. Russell & Co., Inc., 281 Pa. 320, 126 A. 791 (1924). In Gianni, it was held that if a written agreement was intended by the parties to encompass the entire understanding between the parties, then evidence of a contrary nature, based upon an oral agreement at the time of the execution of the written agreement, was barred in the absence of fraud, accident or mistake. As later stated by former Chief Justice STERN in O'Brien v. O'Brien, 362 Pa. 66, 71, 66 A. 2d 309, 311 (1949).: 'That principle (the Parol Evidence Rule) is to the effect that, in the absence of any allegation of fraud, accident or mistake, "the writing constitutes the agreement between the parties, and its terms cannot be added to nor subtracted from by parol evidence:." ' See also: Speier v. Michelson, 303 Pa. 66, 154 A. 127 (1931); United Refining Co. v. Jenkins, 410 Pa. 126, 189 A. 2d 574 (1963).

"In Gianni, however, the court provided for an exception by saying: 'The writing must be the entire contract between the parties if parol evidence is to be excluded and to determine whether it is or not the writing will be looked at and if it appears to be a contract complete within itself. ". . . it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, were reduced to writing." ' (281 Pa. at 323). From this language has developed an exception to the Rule, i.e.; that parol evidence is admissible to explain and supplement a written agreement where such evidence *clearly** shows that the writing in question was not intended to and did not properly state the entire agreement between the parties. Boyd Estate, supra; Allinger v. Melvin, 315 Pa. 298, 172 A. 712 (1934); Universal

---

\* Italics in *Dunn v. Orloff.*

Film Exchanges, Inc. v. Viking Theatre Corp., 400 Pa. 27, 161 A. 2d 610 (1960). As stated in Boyd: '. . . the parol evidence rule has never barred the introduction of clear, precise and convincing evidence to show that *the party who seeks to enforce the written agreement according to its tenor has admitted and acknowledged that** the agreement as written did not express what the parties intended*** and that what the parties intended was omitted from the written agreement by mistake or accident.' (Emphasis supplied) (394 Pa. at 233). . . . Before examining the trial testimony and pleadings to ascertain if, *in fact*** such an *admission*** exists, it must be noted that the burden was upon [the petitioners here, the appellees] to show that [Walter] *admitted*** that the [signature cards] did not express the entire agreement between the parties *and such proof must be by 'clear, precise and convincing' evidence:* Universal Film Exchanges, Inc. v. Viking Theatre Corp., supra. By such qualitative evidentiary standard must [appellees'] evidence be weighed."

An examination of the bank signature cards, especially when supplemented by the testimony of the Bank President as to their meaning and effect, discloses that at the time of opening of these accounts the depositors were expressly informed that any money deposited in the accounts by either of them was to be owned by them jointly and that "in the case of the death of either one of them, the sum on deposit belongs to the survivor."

The signature card in this case is almost identical with the card in *Amour Estate*, 397 Pa., supra. The bank signature card in *Amour Estate* provided: "It is understood and agreed that any and all sums that may from time to time stand in this account, to the credit

* Italics, ours.
** Italics in *Dunn v. Orloff*.

of the undersigned depositors, *shall be taken and considered as belonging to them as joint tenants* and not as tenants in common ... The Beneficial Savings Fund Society of Philadelphia is hereby *authorized and directed to deal with the survivors or survivor of us as the sole and absolute owners of such sums.*" In *Amour Estate,* the Court held the above-mentioned signature card to be a *complete* written agreement and accordingly stated that in the absence of fraud, accident or mistake *parol evidence* of a prior or contemporaneous representation or agreement *was inadmissible* to alter, vary or modify its contents.

Furthermore, two other decisions of this Court assist us in arriving at the conclusion that the signature cards in question represented the complete agreement of the parties. The bank signature card in *Slavinski Estate,* 420 Pa., supra, provided: "It is agreed and understood that any and all sums that may from time to time stand on this account, to the credit of the undersigned depositors, *shall be taken and deemed to belong to them as joint tenants* and not as tenants in common ... This bank is hereby *authorized and directed to deal with the survivor as sole and absolute owner thereof.*" In *Slavinski Estate,* this Court held that the signature card in question was not as clear in revealing donative intent as that in *Amour Estate,* 397 Pa., supra, *because of the ambiguity arising from the crossed-out markings in front of one of the signers' names.* Therefore, the language of the signature card in that case was not per se ambiguous but was made uncertain or ambiguous by the crossed-out markings. The Opinion of the Court clearly implies that if it were not for these additional markings, the Court would have concluded that the bank signature card represented the complete agreement of the parties, and the parol evidence rule would have been applicable.

In *Fenstermaker Estate*, 413 Pa., supra, the bank signature card provided: "It is agreed and understood that any and all sums that may from time to time stand in this account, to the credit of the undersigned depositors, *shall be taken and deemed to belong to them as joint tenants* and not as tenants in common . . . and in case of death of either, the Bowmanstown Bank is hereby *authorized and directed to deal with the survivor or survivors as sole and absolute owner or owners thereof.*" In *Fenstermaker Estate*, the Orphans' Court admitted parol testimony to show that when the decedent created the joint bank account in question *no gift was intended. No objection* to the admissibility of such evidence was made in the Orphans' Court, and hence no question as to its admissibility could have been raised before this Court. However, this Court, speaking through Mr. Justice JONES in a *unanimous* Opinion, said, "Under the circumstances, therefore, we will consider such evidence as though properly admitted." It is clear by necessary implication that this Court was of the opinion that the parol testimony was inadmissible in that case and would have so ruled had timely objection been made in the lower Court.

We hold that as to the question of the applicability of the parol evidence rule, the factual situation herein presented is ruled expressly by *Amour Estate*, 397 Pa., supra, and impliedly by *Slavinski Estate*, 420 Pa., supra, and by *Fenstermaker Estate*, 413 Pa., supra, and that the language of the bank signature cards clearly discloses the donor's (*John* Zabek's) donative intent. The following evidence was offered by the petitioners (the appellees) and accepted by the Orphans' Court to show that Walter Zambek (executor and a joint tenant) had admitted, after the deposit, that the bank signature cards did not express the entire or even the real agreement between himself and his father. Stanley

Zombek, one of testator's sons, testified that Walter had told him, "Everything would be split up equally." among all the children at their father's death. Frank Zombek, one of testator's sons, and now one of his administrators, testified: "A. [Walter] came to my home and he said, 'Frank, I have something to tell you.' I said, 'Well, let's sit down and talk about it.' He said, 'I had dad *make the will.*' He said, 'Don't worry about a thing, everything is to be split up equally.' I said, 'That's good.' Then it come to the money part, and he said, 'We took the money, we put it on the table, and we counted it all.' So the next day they had put it into a shopping bag and taken it to the bank. He said, '*I* put some money in the bank, and I put some money in *my* checking account so I can pay the bills when my dad goes to the hospital, and I put some into a safe deposit box.' I said, 'You're not allowed to do that, Walter,' and he said, 'we won't have to pay any inheritance tax on it.' . . . Don't worry about a thing, Frank, everything will be split up equally.' "

The above-mentioned testimony was the only evidence of an admission by *Walter* Zambek (joint tenant) that the bank signature cards did not reflect the entire agreement between himself and his father. There was no testimony of any such statements by *John* Zabek, their father, the creator of these accounts. Furthermore, McDivitt, the bank's President, made a particularly relevant and convincing statement at the time of the opening of the aforesaid accounts informing John Zabek and Walter Zambek of the legal meaning and effect of these signature cards. Even if the testimony of the two witnesses, Stanley and Frank Zambek—who were beneficiaries under their father's will and accordingly would have profited if the aforesaid bank accounts had been declared to be a part of their father's estate—were considered, arguendo, to be admissible, it would

not suffice to meet the standard of *clear, precise and convincing* evidence required by our cases to overcome and rebut the prima facie evidence of the inter vivos gift. Compare *Universal Film Exchanges, Inc. v. Viking Theatre Corp.*, 400 Pa. 27, 161 A. 2d 610; *Boyd Estate*, 394 Pa. 225, 146 A. 2d 816.

Decree reversed, each party to pay own costs.

Mr. Justice COHEN, Mr. Justice EAGEN and Mr. Justice ROBERTS concur in the result.

---

CONCURRING OPINION BY MR. JUSTICE POMEROY:

I concur in the decision of the Court, but since I reach the result by a somewhat different approach to the problem, I summarize herewith my reasons:

(1) I agree that the bank signature card establishing the joint account with right of survivorship between John Zabek and his son, Walter, in the form here employed constituted under our cases a complete written contract. The funds which went into the account being those of John, the contract was one of gift to Walter.

(2) While the validity of a gift may be challenged by proper evidence of lack of the requisite donative intent, lack of capacity on the part of the donor, or lack of completeness of the gift, no such attempts were made in this case.

(3) The testimony of John's other sons, Stanley and Frank, as to statements in the nature of admissions made by Walter, was objected to at the hearing by appellants. I agree with Judge HAY, dissenting in the court below, that the testimony was violative both of the parol evidence rule and of the so-called Dead Man's Act (Act of May 23, 1887, P. L. 158, 28 P.S. §322) and should have been excluded. It was violative of the Act because, in seeking to reclaim the proceeds of the joint account Stanley and Frank were, of course,

attacking the gift of which John, the decedent, was donor and Walter, now deceased, was donee. Both donor and donee had an interest in maintaining the integrity of the gift; their right and capacity to enter into the transaction are presumed; both donor and donee, through their personal representatives, are parties to the record herein. In seeking to strike down the gift, "the interest of appellants of necessity must be adverse to that of decedent[s]." *King v. Lemmer,* 315 Pa. 254, 173 Atl. 176 (1934). *Pronzato v. Guerrina,* 400 Pa. 521, 531, 163 A. 2d 297 (1960); *Katz v. Lockman,* 356 Pa. 196, 51 A. 2d 619 (1947).

(4) The testimony of William Z. McDivitt, the president of the bank where the account was opened, on the other hand, stands in a different light. While not essential to prove a gift, his testimony was strongly corroborative of John Zabek's donative intent, and was unobjected to by any party. McDivitt's testimony did not violate the Dead Man's Act, since he was a disinterested witness as to both decedents, nor the parol evidence rule, since it was not offered to alter, revoke or amend the contract in question.

Mr. Justice JONES joins in this concurring opinion.