## Scott Estate

*Robert E. Porter,* and *Grahame P. Richards, Jr.,* for accountants.

*Fred T. Cadmus, 3rd,* for claimants.

MacELREE, P. J., March 4, 1970.——Samuel Scott, a resident of the Borough of Downingtown, died July 26, 1969, testate.

His last will was duly probated by the Register of Wills of Chester County and letters testamentary thereon were duly granted to the First Pennsylvania

Banking and Trust Company and John A. Scott, a brother of decedent, coexecutors named in the will.

Under the terms of the will, decedent's son, Robert S. Scott, is given a life interest in one-half of the residuary estate with the right to withdraw one-third of the principal at the age of 25, one-third at age 30, and the entire balance remaining at age 35.

Under the terms of the will, decedent's daughter, Cynthia S. Scott (now Cynthia Scott Sellers) is likewise given a life interest in the remaining one-half of the residuary estate, but without any rights of withdrawal.

The will further provides that upon the death of either child, his share of the remaining principal goes to the then surviving issue and in default of issue is added to the share of the survivor.

Robert S. Scott and Cynthia Scott Sellers, brother and sister, are decedent's only surviving children.

At the time of his death, said decedent, Samuel Scott, was in possession of a certain five percent Savings Deposit Certificate No. 3164 of the Downingtown National Bank, said certificate being located in a certain safe deposit box at the Downingtown National Bank, said box being registered in the joint names of decedent and his son, Robert S. Scott.

The said five percent Savings Deposit Certificate is presently in the possession of the First Pennsylvania Banking and Trust Company, coexecutor under the will of decedent.

Robert S. Scott and Cynthia Scott Sellers, in due course, advised the coexecutors of their father's estate, that they, Robert S. Scott and Cynthia Scott Sellers, claim joint ownership of said savings deposit certificate.

The coexecutors, notwithstanding their position as a stakeholder, feel that they are bound under the applicable law to contend that the savings deposit cer-

tificate is, in fact, an inventory item belonging to the estate of Samuel Scott, deceased, and that it should pass under the terms of his, decedent's, will.

Such a situation existing, on petition of Cynthia S. Scott, now Cynthia Scott Sellers, and Robert S. Scott, a citation was issued directed to the First Pennsylvania Banking and Trust Company and John A. Scott, coexecutors of the last will and testament of Samuel Scott, deceased, to show cause, if any they have, why the prayer of the aforesaid petition should not be granted and the five percent Savings Deposit Certificate No. 3164 of the Downingtown National Bank in the amount of $21,000 dated October 1, 1968, should not be delivered to Cynthia S. Scott, now Cynthia Scott Sellers, and Robert S. Scott, as their joint property.

To this citation, a responsive answer was filed.

The matter being at issue, a hearing thereon was duly had on January 6, 1970, as by reference being had to the transcript thereof will more fully and at large appear.

This court, based upon the testimony offered at said hearing, believes itself to be justified in making the following:

## FINDINGS OF FACT

1. Decedent, Samuel Scott, on September 19, 1967, purchased with his own funds two savings account certificates from the Downingtown National Bank.

2. One of these certificates was in the face amount of $20,000. The other, or second certificate, was in the face amount of $5,000.

3. Each of these certificates was registered in the names of "Samuel Scott *or* Robert S. and Cynthia S. Scott."

4. On or about August 16, 1968, decedent stated to the officers of the Downingtown National Bank that

both of said certificates had been lost by him, decedent.

5. The Downingtown National Bank thereupon, at decedent's request, reissued the $20,000 certificate increased by the accrued interest in the face amount of $21,000.

6. The $5,000 certificate with accrued interest was, at the request of decedent, redeemed by the bank, the proceeds thereof delivered to decedent who used a substantial portion of it to buy a ring for a woman to whom he was engaged to be married.

7. At or about the same time, decedent, at the instance of one of the bank's officers, rented a safe deposit box in which he, decedent, placed the $21,000 certificate.

8. This safe deposit box was registered at the bank in the names of Samuel Scott and his son, Robert Scott.

9. Furnished with a signature card, decedent signed the signature card at the bank and took it, together with two keys to the box, along home with him.

10. At home, decedent showed the signature card to his son, Robert, asked him to sign it, which decedent's son did.

11. Decedent thereupon gave to his son one of the keys to the bank box, but retained the signature card.

12. The signature card was never returned to the bank, despite suggestion by the son of decedent to his father to that effect.

13. The savings certificate for $21,000 remained in the box at the Downingtown National Bank until decedent's death, during all of which time no entry or attempt at entry to the safe deposit box was made by anyone.

## DISCUSSION

In the subject estate, there is no allegation of joint tenancy *with right of survivorship.*

This is the case of a savings deposit certificate in the name of the depositor *or* his son and daughter, without survivor or anything more other than that it was in a safe deposit box at the Downingtown National Bank, said box being listed with the bank in the name of decedent and his son, Robert Scott.

Apparent reluctance on the part of decedent to file a joint signature card with the bank is, in the opinion of this court, indicative of decedent's desire as expressed by the lower court's opinion in Elliott Estate, 378 Pa. 495, 500, of possibly wanting to give away his money and keep it at the same time.

From the testimony offered in support of the claim of decedent's son and daughter and after a thorough examination of the cases cited by counsel for respondents, this court, applying the legal principles as set forth in Brozenic Estate, 416 Pa. 204, 207, and the cases cited therein, concludes as follows:

## CONCLUSIONS OF LAW

We conclude that there was no intention on the part of decedent to make an immediate inter vivos gift of the certificate involved.

Neither was there an actual or constructive delivery thereof so as to divest decedent of all dominion and control, nor as to invest in the alleged donees so much dominion and control of the subject matter of the alleged gift as is consonant with a joint ownership or interest therein.