### Light Estate

*Charles V. Henry, 3rd,* for exceptant.

*James R. Whitman,* and *Lewis, Brubaker, Whitman & Christianson,* for accountant.

GATES, P. J., October 26, 1970.—On July 29, 1968, Samuel B. Light was adjudicated an incompetent, and the First National Bank of Lebanon, Pa., was appointed guardian.

Thereafter, on September 7, 1968, the guardian withdrew the balance in a checking account in the amount of $975.38, which was on deposit at the Jonestown Bank and Trust Company. On the same day, the guardian withdrew the balance in a savings account at the same bank in the amount of $13,549.43. At the time of withdrawal, both accounts were registered in the name of Samuel B. Light or Irene E. Boyer. The registration was accomplished by filing with the bank a signature card authorizing withdrawals by either Irene E. Boyer or Samuel B. Light.

There was no indication on the signature card that the account was to pass to anyone on death by right of survivorship.

Samuel B. Light died on July 18, 1969, leaving a will dated August 14, 1967. He was survived by the objector, Irene Boyer, one of his four children. Another son, George A. Light, was named executor and sole heir under decedent's last will and testament.

On August 14, 1969, the guardian filed its first and final account reflecting a balance for distribution in the amount of $9,608.46. This account included the disputed checking and savings accounts, plus monthly Social Security checks, less expenditures paid by the guardian for the maintenance of its ward in a nursing home, plus medical and other legal expenses. Attached to the account is a statement of proposed distribution indicating that the guardian proposes to pay the balance to the estate of Samuel B. Light.

Subsequently, Irene E. Boyer filed objections to the proposed schedule of distribution, claiming that the balance should be paid to her as the surviving joint owner of the checking and savings accounts.

On petition, we appointed an auditor who, after hearing, filed a report in which he concluded that the balance in the hands of the guardian should be turned over to the executor of the estate of Samuel B. Light, because Irene E. Boyer had not established, by the necessary degree of proof, that Samuel B. Light had made a gift to her of these accounts. Thereafter, exceptions to the report were filed on behalf of Irene E. Boyer, and it is these exceptions which are presently before us.

The objector contends that a guardian does not have the power to close out a jointly held account of its ward and terminate the interest of the other joint

owner, and, further, that the evidence produced at the auditor's hearing established that Samuel B. Light did create a joint account with Irene Boyer with right of survivorship or, in the alternative, as tenants in common.

It is not disputed that all of the funds in the two disputed accounts were the funds of Samuel B. Light. Under the circumstances, the guardian had not only the right but the duty to take possession of the personal assets of the incompetent and make all reasonable expenditures necessary to preserve them. See section 401 of the Incompetents' Estates Act of February 28, 1956, P. L. (1955) 1154, 50 PS §3401. The objector does not dispute the fact that Samuel B. Light could have withdrawn all of the funds in the account during his lifetime or changed the signature card to delete the authorization of withdrawals by Irene Boyer or to substitute another authorized signature in her place as he had done previously. In that the ward of the guardian had this right during his lifetime, so did the guardian. Had the ward exercised his right and removed the name of Irene Boyer, the funds would have passed to his estate. The guardian having prudently exercised this right on his behalf, it would seem to follow that the funds in the guardian's hands should likewise pass to his estate.

The objector cites two district court cases in support of her contention that a guardian does not have the power to close out the account of its ward held jointly with another and terminate that person's interest in the account. She cites Kingham Estate, 14 Fiduc. Rep. 293 (O. C. Montgomery County, 1964) and Misto Estate, 10 Fiduc. Rep. 215 (O. C. Luzerne County, 1960). In both cases, the court noted that to permit the guardian to close out the accounts would be to ". . . [disturb] . . . , the carefully

planned dispositive scheme of the person who later became incompetent, which it had no right to do any more than it had any right to revoke any will of the incompetent (and she had one) or to change any beneficiaries on her life insurance policies, all very personal rights reserved unto the incompetent herself, which no guardian can usurp."

The distinction between these cases and this one is rather obvious. The accounts they were referring to were carefully planned. Both accounts were registered with the bank clearly indicating that the account was "with right of survivorship and not as tenants in common." In the present case, however, there is no carefully planned dispositive scheme of Samuel B. Light. At the most, the records disclose merely that Irene Boyer was authorized to withdraw funds from the account. The bank records do not in any way indicate what Samuel B. Light intended should happen to the account upon his death.

This, then, brings us to the objector's second contention that the evidence establishes that Samuel B. Light created a joint account with his daughter with right of survivorship or in the alternative as tenants in common. We disagree.

In Berdar Estate, 404 Pa. 93, it was held that: ". . . When a depositor creates a joint savings account with right of survivorship, and a signature card so stating is signed by both parties, a prima facie inter vivos gift to the other party and of the creation of a joint tenancy with right of survivorship is established . . ." Although the decision in this class of case often depends upon the exact wording of the deposit account and the signature card and the agreement, if any, accompanying it, the law and the proof required in such cases are well settled.

Evidence to establish an inter vivos gift must be

clear, precise and convincing. Even in those cases where the signature card provides that the signers are applying for a savings account in the joint names of the applicants as joint tenants with right of survivorship and not as tenants in common does not, of itself, establish a prima facie gift where it is uncontested that all of the funds when deposited and at the time of the creation of the joint savings account were the sole personal property of decedent and that decedent had possession of the passbook at his death: In re Cilvik Estate, 439 Pa. 522, 267 A. 2d 836; Berdar Estate, supra; Brozenic Estate, 416 Pa. 204.

The instant case is much stronger than the foregoing cases because the bank signature cards in no way indicate that the parties contemplated the creation of a joint tenancy with right of survivorship, and, therefore, we have no prima facie case.

In Brozenic Estate, supra, the court recognized that parol evidence is admissible to establish a valid inter vivos gift and that the burden of proving a gift can be established only by evidence which is clear, direct, precise and convincing. Furthermore, in Bunn Estate, 413 Pa. 467, it was held that ". . . To constitute a valid gift inter vivos . . . , two essential elements are requisite: An intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein."

The evidence in the instant case falls woefully short of the requisite burden. There is absolutely no evidence of an immediate intent on the part of Samuel Light to make a gift of these accounts to Irene Boyer. The only evidence on the subject was the testimony

of Lester L. Fox. Mr. Fox testified that some time after decedent had deleted the name of his son and added the name of the objector to the signature cards, he had a conversation with decedent. Mr. Fox testified that decedent said, "He would put the money in Irene's name." And on another occasion, decedent said, "That he would cut George Light off and he said he would put Irene on." At best, these conversations would indicate that decedent at some time after the accounts were changed had the intent to place the money in the name of the objector. It does not show that decedent ever did anything about it, and it merely indicates that he was contemplating doing something with the accounts in the future. However, it cannot be said that this conversation would indicate that he had a present intent to make a gift when he established the account as he did because he was speaking at some time after the account was set up.

Thus, we conclude that there is insufficient evidence to establish that at the time of the creation of the disputed accounts decedent intended an inter vivos gift of the account to the objector or the creation of a joint tenancy with the right of survivorship. Furthermore, all of the evidence discloses that decedent did not divest himself of dominion and control over these accounts but that he had the right and, indeed, did use the accounts and retain possession of the savings account passbook.

The objector asks us to draw a peculiar inference from the fact that the bank did not have printed signature cards or account agreements containing the requisite survivorship language. She asks us not to penalize her because of this and to infer that Mr. Light would have used such a card if the bank had one. This is asking quite a bit, especially since she did not show that Mr. Light even asked for such a

card. Although not in evidence, we are certain that the Jonestown Bank and Trust Company had a typewriter, pens and pencils and could have easily accommodated Mr. Light had he requested the survivorship language. On the other hand, we believe that the reasonable inference from what was, in fact, done by Mr. Light is that he intended only that Mrs. Boyer be authorized to withdraw the funds in the event that he was unable to do so.

One further argument deserves consideration. The objector produced testimony that Mr. Light was angry with his son George, so he took his name off the account and put on the name of Mrs. Boyer. From this we are to infer an intention on Mr. Light's part to make a gift of this money to his daughter, Mrs. Boyer, because he was angry with his son. But the evidence discloses that the bank accounts were changed on January 19, 1966 and, more than a year later, Mr. Light drew a will leaving his entire estate to his son George. Considering this, we prefer to believe that he was not too angry with his son and must have intended that he get something from his estate.

Under the circumstances, the exceptions to the proposed schedule of distribution are not well taken and will be refused.

## ORDER

And now, to wit, October 26, 1970, the exceptions are dismissed, and the account and statement of distribution having been confirmed nisi on October 6, 1969, they are hereby confirmed absolutely, and the guardian is directed to make distribution in accordance with the statement of proposed distribution attached to the account.