348 A.2d 108

In re ESTATE of Herbert KEENEY, Deceased, Late of the Township of Tulpehocken, Berks County, Pennsylvania.

**Appeal of John KEENEY.**

Supreme Court of Pennsylvania.

Argued April 10, 1975.

Decided Nov. 26, 1975.

46

George E. Christianson, Lewis, Brubaker, Whitman & Christianson, Lebanon, for appellant.

John E. Ruth, David A. Binder, Reading, for appellee, Est. of Herbert Keeney, Dec'd.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

POMEROY, Justice.

This is an appeal [1] by John R. Keeney from a decree of the orphans' court division of the court of common pleas of Berks County ordering him to surrender to the estate of his deceased father, Herbert Keeney, the proceeds of a joint bank account standing in the names of Herbert Keeney and John R. Keeney as joint tenants with right of survivorship and two certificates of deposit issued in the same names. Finding the decree to have been in error, we will reverse.

On September 18, 1969, Herbert Keeney, age 74, sold his farm in Jefferson Township, Berks County, Pennsylvania for approximately $16,000. The next day, September 19, Herbert and his oldest son, John, went to the Strausstown branch of the Bank of Pennsylvania and purchased a certificate of deposit for $12,000, all of which was derived from the sale of the farm. On November 13, 1969, Herbert and John returned to the bank and purchased a second certificate of deposit for $6,000. Both certificates were issued in the names of "Herbert Keeney or John Keeney," and John and Herbert each signed a "Joint Certificate of Deposit Contract" with respect to each certificate. The contracts indicated that the certificates were to be held by them as joint tenants with right of survivorship. Between the dates of these transactions, on October 27, Herbert and John opened a joint checking account at the same bank with an initial balance of $500.[2] At that time, the parties executed a

1. Jurisdiction of this appeal is in this Court by virtue of the Act of July 31, 1970, P.L. 673, No. 223, art. II, § 202(3), 17 P.S. § 211.-202(3) (Supp.1975).

2. The balance at the date of Herbert's death was somewhat larger, having been augmented by deposits of interest payments on at least one of the certificates of deposit.

signature card which stated that funds deposited in the checking account would be held by them as joint tenants with right of survivorship. It is undisputed that all the funds used to purchase the certificates of deposit were supplied by Herbert Keeney.

After he sold his farm in Jefferson Township, the decedent moved to a house he owned in Rehrersburg, Pennsylvania, where he lived with another son, Alvin Keeney. On January 8, 1971, Herbert and John leased a safe deposit box at the Bank of Pennsylvania in the names of "Herbert Keeney or John R. Keeney", and deposited the two certificates of deposit in the box. Herbert and John each retained a key to the box, but Herbert surrendered his key to John when he was hospitalized for, as it developed, his final illness. During his lifetime, Herbert cashed three of the interest checks paid on the $12,000 certificate of deposit. It appears that all the other checks for interest on the two certificates were either deposited in the checking account or placed in the safe deposit box. At no time prior to Herbert's death did John receive the interest from the certificates of deposit or draw on the checking account.

Herbert Keeney died intestate on November 5, 1972, survived by thirteen children. So far as appears from the record, his mental faculties were unimpaired until the moment of his death. On November 6, 1972, the day after their father's death, Elmer Keeney, Tyrres Keeney and Esther M. Behney, children of Herbert and appellees herein, filed suit in equity seeking an injunction preventing John from cashing the certificates of deposit or drawing on the checking account, and ordering him to deliver the certificates and the account proceeds to Herbert's estate. The suit was brought, presumably, for the benefit of all the intestate heirs of Herbert (i. e., his children) other than John.[3]

---

3. After the issuance of letters of administration in Herbert Keeney's estate, the action was transferred to the orphans' court division. The propriety of that transfer is not questioned.

In a decree dated August 12, 1974, the trial court awarded the certificates of deposit and the proceeds of the checking account to the decedent's personal representatives. In the court's view, the evidence established that at the time the joint property interests were created John and Herbert stood in a confidential relationship, which shifted to John Keeney the burden of showing that the transactions in question were the free, voluntary, and intelligent acts of his father. The Court further concluded that John Keeney had failed to sustain this burden.

"The creation of a joint account with rights of survivorship, evidenced by a signature card signed by both parties, is prima facie evidence of an inter vivos gift from the party funding the account to the other joint tenant." *Scott Estate*, 455 Pa. 429, 316 A.2d 883 (1974).[4] If, however, a confidential relationship exists between the parties to a joint account, the presumption of a gift does not apply; rather, the person or persons who benefited from the creation of the account bear the burden of proving that the party to the account who furnished the money or other consideration intended to relinquish part ownership therein. *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972); see *Scott Estate, supra.*

"The concept of a confidential relationship cannot be reduced to a catalogue of specific circumstances, invariably falling to the left or right of a definitional line. See 9 Wigmore, Evidence, § 2053, at 364–366 (3rd ed. 1940). The essence of such a relationship is trust and reliance on one side, and a corresponding opportunity to abuse that trust for personal gain on the other. With this in mind, each case must be analyzed on its own facts. 'Perhaps all that can be said with certain-

---

**4.** See *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972); *Sivak Estate*, 409 Pa. 261, 185 A.2d 778 (1962); *Berdar Estate*, 404 Pa. 93, 170 A.2d 861 (1961); *Furjanick Estate*, 375 Pa. 484, 100 A.2d 85 (1953).

ty is that the normal rules respecting the burden of proof will not obtain where there is something in the relationship or circumstances of the donor and the donee that makes it doubtful that the normal presumption of a gift has any basis in reality.' *Dzierski Estate, supra,* 449 Pa. [285] at 290, 296 A.2d [716] at 718." *Scott Estate,* 455 Pa. 429, 432, 316 A.2d 883, 885 (1974).

█. The conclusion that in the instant case father and son stood in a confidential relationship is not borne out by the record. The critical testimony on this point was supplied by the bank teller, Dorothy R. Stoudt. Mrs. Stoudt testified that, when John and Herbert arrived at the bank on September 19, 1969, she explained to them in detail the nature of a joint tenancy with right of survivorship, the inheritance tax consequences of the death of one of the tenants, and the alternative of delegating a power of attorney to John. What happened next is summarized in the opinion of the court en banc as follows:

"It appears that the decedent and his son, John, discussed her advice in Pennsylvania German and when she asked them how they wanted the accounts [5] opened, the son, John said to her, 'he wants it "or" '. She also testified that she noticed that the decedent was more familiar with Pennsylvania German than with English, but that she did not know what the decedent and his son, John, said to each other . . . [I]t appears that the decedent, who was not familiar with the English language, depended upon his son, John, who

5. This portion of the opinion of the orphans' court division telescopes the chronology of events. Herbert and John went to the bank on three separate occasions in 1969: twice to purchase certificates of deposit, and once to open the checking account. Mrs. Stoudt testified that she explained the nature of a joint tenancy to the Keeneys on September 19, when they purchased the first certificate of deposit, and again on October 27, when they opened the checking account. The testimony summarized above apparently relates to the purchase of the first certificate of deposit.

volunteered the answer when Mrs. Stoudt inquired as to how the account was to be opened, when he said, 'he wants it "or" '. In other words, we find that a confidential relationship existed between the decedent and his son, John, . . ."

This summary does less than complete justice to Mrs. Stoudt's testimony. She testified that she knew Herbert Keeney "as a customer," and that he understood English, although he was more comfortable with Pennsylvania German. Moreover, she herself could understand enough of what John Keeney said to his father in Pennsylvania German to know that he was merely repeating what she had just finished saying to them both in English. Lastly, she testified that after John Keeney had said "he wants it 'or' ", she asked Herbert Keeney in English whether this was what he wanted, and he replied "yes". This testimony was uncontradicted. In our view, this evidence does not support the conclusion that Herbert Keeney did not understand what he was told by Mrs. Stoudt, or that he was relying blindly on his son's judgment in purchasing the joint certificates of deposit and setting up the joint account.

■ One other item of testimony requires discussion. John Keeney was called to the stand by the plaintiffs, and testified that on the day before Herbert Keeney had entered the hospital just prior to his death, Herbert had told John to pay his hospital and funeral expenses, pay each of the other children $1,000 and keep the rest of the money for himself.[6] Mrs. Behney, one of the plaintiffs, later contradicted John's testimony as to what their father had said. She testified that John had said, at a meeting in her lawyer's office, that "his father told him to pay the hospital and funeral bills and divide the money." Of course, as an attempted testamentary disposition of his property, any oral statement by Herbert Keeney

6. This testimony was objected to by John's lawyer as inadmissible parol evidence, but the objection was later withdrawn.

was obviously defective. See 20 Pa.C.S. § 2502 (1975 pamphlet). The differing quoted statements do suggest that the decedent understood the mechanics of a joint tenancy with right of survivorship, and realized that John would have legal title to the certificates and the checking account after his death. The critical question is, what impact does either statement have on the issue of Herbert Keeney's donative intent at the time he created the joint property interests. If such a statement had been made immediately prior to or contemporaneously with the transactions in question it might be said that the statement negated the existence of a completed outright gift to John Keeney. See *Slavinski Estate*, 420 Pa. 504, 218 A.2d 125 (1966), and *Potter Title & Trust Co. v. Sitterly*, 73 P.L.J. (C.P. Allegheny County 1925). But there is no support for the contention that a statement made as long as three years after the creation of a joint property interest is probative of the transferor's intent at the time of the transaction. Moreover, giving weight to such after-the-fact statements as a general practice would seriously undermine the salutary principle we announced in *Furjanick Estate*, 375 Pa. 484, 493, 100 A.2d 85 (1953):

"The question in this class of case ofttimes depends upon the exact wording of the deposit account and the card or agreement accompanying it. Do they clearly show the intention of the depositor, settlor, or contractor? If his intent is uncertain or ambiguous, parol evidence is admissible; if the writings clearly show an intent to make an absolute gift, or an irrevocable trust, or a specific and complete agreement between the parties, then in the absence of fraud, accident or mistake no subsequent acts or declarations of the donor or settlor or contractor can change or revoke or annul the gift, or trust, or contract, without the consent of the other party."

Accord, *Amour Estate*, 397 Pa. 262, 264–5, 154 A.2d 502 (1959).

█ Because the record fails to support the existence of a confidential relationship between Herbert Keeney and his son John, the burden of proof with respect to Herbert's intent in creating the joint bank account remained on the plaintiffs. Our review of the record reveals that the plaintiffs failed to produce sufficient evidence to sustain a finding that Herbert Keeney did not intend to make a gift to John. Thus, the decree of the chancellor must be reversed.

Decree reversed; each party to bear own costs.

JONES, C. J., did not participate in the consideration or decision of this case.