359 A.2d 756

**In re ESTATE of Constance CHIARA, Deceased.**

**Appeal of Gloria C. MURPHY.**

Supreme Court of Pennsylvania.

Argued May 6, 1975.

Decided July 6, 1976.

Paul E. Clouser, Harrisburg, for appellant.

Leslie B. Handler, Harrisburg, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY and NIX, JJ.

## OPINION

POMEROY, Justice.

This appeal raises the question whether $32,000 of a decedent's money deposited in two banks and represented by three savings certificates is an asset of the decedent's estate, or whether, on the contrary, the money had been given by decedent in her lifetime to her son, Joseph E. Chiara. The orphans' court division held the latter.

Constance Chiara, the decedent, died testate on October 26, 1969. Her will was duly probated and letters tes-

tamentary issued to decedent's two children, Joseph and a daughter, Gloria. The will provided that, except for certain named personal possessions which were bequeathed to Gloria, all property was to be divided equally between Joseph and Gloria.

Because of disagreements between the two children, they resigned as executors and Dauphin Deposit Trust Company [hereinafter "Dauphin Deposit"] was appointed administrator d. b. n., c. t. a. Dauphin Deposit filed a first and final account and a statement of proposed distribution on March 8, 1973. Gloria and Joseph each filed objections to the account. After depositions and a hearing the court overruled Gloria's objections except as to the personalty specifically identified in the will.[1] Gloria then took this appeal.

Gloria asserts as error the lower court's holding that the three savings certificates or their proceeds constituted inter vivos gifts to her brother. Two of the certificates, one for $2,000 and the other for $16,000, were issued by the Harrisburg National Bank and Trust Company [hereinafter "Harrisburg National"] in September and October, 1968. They were made out to "Mrs. Constance Chiara or Joseph E. Chiara." The other certificate was in the sum of $14,000 and was issued by Dauphin Deposit on January 27, 1968 to "Mrs. Constance Chiara or Mr. Joseph E. Chiara." It is Gloria's contention that the funds represented by the certificates belonged to Mrs. Chiara alone during her lifetime; that the use of Joseph's name on the certificates was merely a "convenience"; and that all of the certificates should be treated as assets of the probate estate and their proceeds equally distributed between herself and her brother.

The principles of law governing inter vivos gifts made through the medium of joint tenancy bank deposits, such

1. Joseph's wife had claimed that the personalty—jewelry, silverware, etc.—had been given to her by Mrs. Chiara during her lifetime. The court held that those items, not now in issue, passed to Gloria under the terms of the will.

as here involved, are well-known. In the case of *Hosfeld Estate*, 414 Pa. 602, 202 A.2d 69 (1964), Mr. Justice (now Chief Justice) JONES summarized those principles as follows:

> "(1) the mere fact that money is deposited in the account of the owner *and* another or the owner *or* another does not *standing alone*, prove a gift inter vivos; (2) it is the burden of the claimant [i. e., the 'another'] to establish the existence of a gift inter vivos by clear, precise, direct and convincing evidence; (3) to constitute a gift inter vivos there must be shown an intention to make an immediate gift and such an actual or constructive delivery to the donee (a) as to divest the donor of all dominion and control, or (b) if a joint tenancy is created, as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein." *Id.* at 605, 202 A.2d at 71.

See also *Balfour Estate,* 392 Pa. 300, 140 A.2d 441 (1958); *Martella Estate,* 390 Pa. 255, 135 A.2d 372 (1957).

■■■■■ We consider first the Harrisburg National certificates. Because it is Joseph who claims to be the donee from the decedent of the certificates by way of inter vivos gifts, it is he who bears the burden of proving that fact by "clear, precise, direct and convincing evidence." *Hosfeld Estate, supra.*[2] The record shows that the dece-

2. It is to be noted that the two Harrisburg National certificates were not supported by bank signature cards delineating the nature of the joint ownership. Had there been such cards, our law is clear that the transaction would be viewed as prima facie an inter vivos gift and the burden of proof would be placed upon the party claiming that no gift was intended (the appellant in this case). See *e. g., Keeney Estate,* 465 Pa. 45, 348 A.2d 108 (1975); *Scott Estate,* 455 Pa. 429, 316 A.2d 883 (1974); *Dzierski Estate* 449 Pa. 285, 296 A.2d 716 (1972). On the other hand, nothing can be inferred from the absence of such cards in this case because, as the record shows, Harrisburg National did not require such cards of its depositors at the time the certificates were issued. (A bank officer testified that the certificates were in a form that

dent gave Joseph $2,000 in cash and a $16,000 cashier's check and told him to purchase the certificates in question; that Joseph did so; that the certificates were issued referenced to the Social Security number of Mrs. Chiara and that she received all the income from the certificates during her lifetime; and that at all relevant times the certificates remained in the possession of Joseph. Joseph, in his uncontradicted testimony,[3] repeatedly denied that the Harrisburg National certificates were placed in both names merely as a "convenience". He recalled what his mother had said to him at the time she gave him the money to purchase the certificates:

> "[S]he told me to take this [the money] and make it a certificate of deposit from another bank and keep it for myself to pay for the care and for what me and my wife had done for her down through the years . . . . ."

He added that the money "was there" if his mother should need it.

After reviewing the entire record, we have concluded that the trial court was justified in finding that as to the two Harrisburg National certificates a gift inter vivos had been made. The two essential elements of an inter vivos gift are donative intent and delivery. *Rankin v. Kabian*, 414 Pa. 554, 201 A.2d 424 (1964). The requirement of donative intent was sufficiently proved through Joseph's uncontradicted testimony that he was told by his mother when she gave him the money

the bank considered to create a joint tenancy with right of survivorship.) Cf. *Balfour v. Seitz*, 392 Pa. 300, 306 n. 9, 140 A.2d 441 (1958).

**3.** Joseph's testimony, although adverse to the interests of the estate, was admissible because all of the parties waived the applicability of the so-called "Dead Man's Act." Act of May 23, 1887, P.L. 158, § 5, cl. (e), 28 P.S. § 322.

with which to purchase the certificates that he was to "keep it for myself." [4]

■ The other prerequisite for an inter vivos gift—delivery—was established by the fact that at all relevant times the certificates were in Joseph's possession; he had complete power over them, and could have cashed them in at any time during his mother's lifetime. Thus Joseph was unquestionably invested with "so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein." *Hosfeld Estate, supra.* See also *Brozenic Estate,* 416 Pa. 204, 204 A.2d 918 (1964); *Bunn Estate,* 413 Pa. 467, 198 A.2d 518 (1964); *Parkhurst Estate,* 402 Pa. 527, 167 A. 2d 476 (1961). Compare *Martella Estate,* 390 Pa. 255, 135 A.2d 372 (1957); *Isherwood v. Springs-First National Bank,* 365 Pa. 225, 74 A.2d 89 (1950).

■ Joseph's evidence on these requirements for a gift consisted largely of his own testimony, but it was not challenged and was apparently believed by the hearing judge. It was sufficient to sustain his burden of proof. [5]

We consider now the $14,000 Dauphin Deposit savings certificate. Like the Harrisburg National certificates, this one was also issued in Mrs. Chiara's name "or" Joseph's. Unlike the others, however, it was backed by a signature card specifically spelling out the joint tenancy nature of their ownership. The proceeds of this certificate were first paid into the estate by Joseph as an advance to pay debts. Later the same amount was repaid

---

4. This was in contradistinction to the $14,000 certificate of deposit (and another not now in issue) which he purchased at Dauphin Deposit. As to that certificate, he testified that "[m]y name was put on there for convenience in case it was necessary for me to take over the funds for her care."

5. Because he was a close relative to the decedent, less evidence is required of him to prove an inter vivos gift than would be required of a stranger. *Balfour v. Seitz,* 392 Pa. 300, 304 n. 4, 140 A.2d 441, 443 n. 4 (1958).

to him by the administrator, Dauphin Deposit. This repayment was apparently made in the belief that Joseph had been the owner of the certificate, and hence of the funds it produced, by way of gift from his mother. As noted earlier, the presence of the signature card contract made it proper to treat the certificate prima facie as a gift. *Keeney Estate, supra; Scott Estate, supra; Dzierski Estate, supra.* In such a situation the burden is then on the person disputing the gift, here Gloria, to prove by clear, precise and convincing evidence that no gift was intended. *Cilvik Estate*, 439 Pa. 522, 267 A.2d 836 (1970); *Slavinsky Estate*, 420 Pa. 504, 218 A.2d 125 (1966); *Brozenic Estate*, 416 Pa. 204, 204 A.2d 918 (1964); *Fenstermaker Estate*, 413 Pa. 645, 198 A.2d 857 (1964). Although appellant argues that this burden was met,[6] the court below made no decision on the merits as to this item.

In its opinion disposing of appellant's objections to the account, the court stated:

> "Third, a $14,000.00 certificate of deposit and a checking account [not now in issue] in the names of the decedent and Joseph Chiara were turned over to the estate and *no objection is made* that the proceeds therefrom be distributed in accordance with the schedule proposed by the administrator." (emphasis added [7]).

We cannot tell from this whether the court did not pass on the question because no formal objection was made or whether the auditing judge overlooked the fact that the proceeds of the certificate were not in fact included in the proposed schedule of distribution, having been repaid by the administrator to Joseph at an earlier time, as

---

6. See, *e. g.*, note 4, *supra*.

7. Appellant informs us (brief p. 22) that she attempted to take an exception to this portion of the court's decree but that the court declined to entertain the exception.

above recounted. The quoted excerpt is susceptible of either interpretation.

Gloria concedes that the question of the proper disposition of the proceeds of the certificate in question was not included in her formal objections to the administrator's account filed in the court below. She argues, however, —and her brother apparently concedes—that the question was raised in her lawyer's trial memorandum and brief in the orphans' court (copies of pertinent parts of which have been included in the record on appeal).

■ While the item in question should, of course, have been the subject of a formal objection to the account, failure to do so should not prove fatal in this case. The trial memorandum presented to the court on Gloria's behalf before hearing on the objections and the brief submitted before decision was rendered were in effect, amendments to the formal objections, and should have been so treated by the court. The rules of the orphans' court divisions are to be "liberally construed to secure the just, speedy and inexpensive determination of every action or proceeding to which they are applicable." Rule 2.1 (formerly Section 2 of Rule 1) of the Orphans' Court Rules of this Court. The same rule allows the orphans' courts to "disregard any error or defect of procedure which does not affect the substantial rights of the parties in interest." See also 20 Pa.C.S. § 3521. If, therefore, the court's failure to consider the issue was because of the "defect of procedure" referred to, the court abused its discretion in the premises. If, on the other hand, the court was under the impression that the distribution schedule disposed of the disputed item, it was factually mistaken. This aspect of the case must, therefore, be remanded for disposition.

Decree affirmed except with respect to the treatment of the proceeds of the certificate of deposit issued on January 27, 1968 by Dauphin Deposit Trust Company in

the names of "Mrs. Constance Chiara or Mr. Joseph Chiara"; with respect to said item the decree is vacated and the case is remanded to the court below for further proceedings consistent with this opinion.

Costs on estate.

MANDERINO, J., did not participate in the consideration or decision of this case.

NIX, J., concurs in the result.

JONES, C. J., and ROBERTS, J., would affirm the decree of the Orphans' Court.