394 A.2d 513

**Christine N. COST**

v.

**Suzanne CALETRI, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 21, 1978.

Decided Nov. 18, 1978.

John J. Driscoll, Hudock & Driscoll, Greensburg, for appellant.

Nathan F. Abromson, Abromson & Abromson, Mount Pleasant, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

POMEROY, Justice.

The present appeal, which involves a surviving spouse's right to make an election under Section 6111 of the Dece-

dents, Estates and Fiduciaries Code ("the Code"),[1] is further evidence of the accuracy of the observation of the late Chief Justice Bell that joint bank account cases, despite the existence of settled legal principles, often prove "vexing" and "difficult" when one seeks to apply these principles "to the different factual situations which so frequently arise . ." *Martella Estate*, 390 Pa. 255, 258, 135 A.2d 372, 373 (1957). The difficulties notwithstanding, we are obliged to agree with appellant that the court below erred in its disposition of this case. We accordingly will reverse.

Phillip H. Cost died intestate on November 10, 1974. His estate consisted of a house in Mount Pleasant, Pennsylvania, held by the entireties with his wife, appellee herein, and various bank accounts. The property with which the lower court's decree and this appeal are concerned, however, are the proceeds of a certain certificate of deposit in the joint hands of Phillip Cost (the decedent) and Suzanne Caletri (decedent's granddaughter), the appellant herein. This certificate was redeemed and its proceeds obtained by Suzanne in decedent's lifetime. It is these proceeds which are the subject of the present action brought by appellee in the orphans' court division of the court of common pleas.[2] After hearing, the lower court held that these proceeds were subject to an election by appellee under Section 6111 of the Code, and this appeal followed dismissal of exceptions by the court en banc.[3]

The evidence presented at the hearing may be summarized as follows. Phillip Cost and Christine N. Cost were married

---

1. 20 Pa.C.S. § 6111 (1975).

2. *Cf.* 20 Pa.C.S. § 711(17) (1975); *Rogan Estate*, 394 Pa. 137, 145 A.2d 530 (1958); *Robinson v. Robinson*, 6 Fiduc.Rep. 562, 7 Pa.D. & C.2d 726 (C.P.Phila.1956). *See also* Act of April 18, 1978, P.L. ——, No. 23, § 2211(a), 20 Pa.C.S. § 2211(a) (effective June 17, 1978, and applicable to decedents dying after that date).

3. A direct appeal was filed in this court pursuant to Section 202(3) of the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, art. II, 17 P.S. § 211.202(3) (Supp.1978), since superseded by Section 722(3) of the Judicial Code, 42 Pa.C.S. § 722(3) (effective June 27, 1978).

for some fifty years, but in the last years of Phillip's life their relationship became seriously strained. As a result of litigation with his wife which need not be detailed here, decedent became acquainted with a lawyer, Donald Hacker, whom he saw fairly often during 1974 regarding property and other matters. Hacker testified at the hearing and recounted his conversations with the decedent. We need not review the discussions at length.[4] Suffice it to say that this testimony shows, as the lower court put it, that "there can be little doubt as to the intention of [decedent] in so far as his wife inheriting any amount of money on his death [is concerned] . . . it is apparent that it was his intention to dispose of his estate so that there was not enough left for the purchase of a cup of coffee." Decedent was, however, quite fond of his granddaughter, who also lived in Mount Pleasant and who visited him often.

In April, 1974, the decedent opened a new account in the names of himself and Suzanne as joint tenants with right of survivorship. This account amounted to slightly more than $17,300, wholly contributed by decedent. Less than a month later, on May 3, 1974, a certificate of deposit in the amount of $17,300 was purchased with funds from the account. This certificate, which matured in one year, was also in the names of Phillip Cost and Suzanne Caletri as joint tenants with right of survivorship. A signature card, which both signed, provided that the certificate

"shall be held and owned by Depositors as joint tenants with the right of survivorship, and not as tenants in common, . . . and upon the death of either Depositor the surviving tenant shall be the sole owner of the Certificate. Each of the Depositors hereby appoints the other as his or her attorney in fact and grants to such attorney full power and authority to receipt for the proceeds of the Certificate at maturity and/or to renew it."

4. The tenor of these discussions is indicated by one example, in which decedent learned from Hacker that he could not sell his house, which was held by the entireties with his wife, without her signature on the deed. In Hacker's words, decedent was "all fired up because he couldn't sell his real estate and take it from his wife because he didn't want her to have anything."

The certificate was placed in decedent's safe deposit box, to which Suzanne had access as a "deputy." Phillip Cost's conception of his granddaughter's interest in these accounts is clear from the testimony. So far as he was concerned, the money was as much hers as his, and could be used by her as she saw fit.[5]

By November, 1974, decedent, who had been ill from time to time during the past six months, was in a nursing home in Clairton, Pennsylvania. On November 4, 1974, appellant, who according to her testimony "had been advised by Mr. Hacker," took a bank power of attorney form to her grandfather at the nursing home. Cost signed the instrument in the presence of two witnesses. On the next day, Suzanne obtained the unmatured certificate of deposit from the safe deposit box and redeemed it by assignment to Pittsburgh National Bank. The proceeds of the certificate were deposited in a bank account which appellant held jointly with her husband.

Four days later, on November 9, Phillip Cost's brother Anthony, who lived in Clairton, informed Phillip at the nursing home that he was going to Mount Pleasant the next day for a reunion. Anthony testified that decedent then told him to "see Suzanne, I gave all my money to Suzanne." Phillip Cost died the next day, November 10, 1974.

Section 6111 of the Code, pursuant to which the lower court decreed that appellee could elect to take against the proceeds of the certificate, provides in pertinent part as follows:

"(a) In general.—A conveyance of assets by a person who retains a power of appointment by will, or a power of revocation or consumption over the principal thereof,

5. Quite apart from Suzanne's testimony, there was testimony from attorney Hacker that, although decedent realized that he could withdraw funds from the accounts at any time, "he was of the opinion that he had given his money to her," and that "he indicated if she wanted to take it out that was up to her." In addition, a bank officer explained at the hearing that an authorized "deputy" could obtain access to another's safety deposit box at any time, and could do so alone.

shall, at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved . . ." [6]

This section, which was derived from Section 11 of the Estates Act of 1947, as amended,[7] was intended to preserve "for the surviving spouse the right to share in the decedent's assets where the decedent has retained important rights of ownership at death." [8] If, however, a husband in his lifetime "makes an outright gift which divests himself of any possible interest so that the property can no longer inure to his benefit, nothing in our case law or statutes [prior, at least, to the recent legislation noted above; see note 6, *supra*] would allow his widow to claim any part of his property." *Schwartz Estate*, 449 Pa. 112, 115, 295 A.2d 600, 602 (1972). See also, *e. g.*, *Montague Estate*, 403 Pa. 558, 560, 170 A.2d 103, 105 (1961). Appellant contends that this is the situation here, for it is her position that because of a valid and complete inter-vivos gift to her by the decedent of the monies in dispute, no rights of ownership in those assets were held by Phillip Cost when he died. This argument requires a brief review of certain legal principles applicable to joint bank accounts and inter vivos gifts.[9]

**6.** Section 7 of the Act of April 18, 1978, P.L. ——, No. 23, [1978] Pa.Legis.Serv. 40, specifically repeals Section 6111 of the Code, which has been replaced, as have Sections 2508 through 2513 of the Code, by a new Chapter 22. This legislation is applicable to decedents dying on or after June 18, 1978, and does not affect the case at bar. It is discussed in Brégy, "New Statute on Spouse's Election," Fiduciary Review, June, 1978.

**7.** Act of April 24, 1947, P.L. 100, former 20 P.S. § 301.11 (1950), repealed by the Act of June 30, 1972, P.L. 508, No. 164, § 3.

**8.** Comment, Joint State Government Commission, *reprinted in* addendum to 20 P.S. § 301.11 (1950), and *Behan Estate*, 399 Pa. 314, 320, 160 A.2d 209, 213 (1960).

**9.** Once again recent legislation, although not applicable to the joint account involved in this case, makes unnecessary an extended discussion of the authorities. See Chapter 63 of the Code, 20 Pa.C.S. §§ 6301–6306 (Supp.1978) (added by the Act of July 9, 1976, P.L. 547, No. 134, effective September 1, 1976, and applicable to accounts created thereafter and previously existing accounts in which a contract of deposit is executed after September 1, 1976).

What we said in *Young Estate*, 480 Pa. 580, 584, 391 A.2d 1037, 1039 (1978), is applicable here:

> "[T]he creation of a joint interest with rights of survivorship in a bank deposit, evidenced by the signatures of all the parties, is prima facie evidence of the intent of the party funding this deposit to make an inter vivos gift to the other joint tenants. *Keeney Estate*, 465 Pa. 45, 348 A.2d 108 (1975); *Scott Estate*, 455 Pa. 429, 316 A.2d 883 (1974); *Dzierski Estate*, 449 Pa. 285, 296 A.2d 716 (1972); see *Chiara Estate*, 467 Pa. 586, 590 n.2, 359 A.2d 756 (1976). The instant case falls squarely within this general rule. The [signature card for this] certificate sets forth in concise and straightforward language the right of either or both of the named depositors or the survivor of them to withdraw the deposited funds after the certificate matures."

See also *Lux Estate*, 480 Pa. 256, 265, 389 A.2d 1053, 1057–58 (1978). In addition, under our case law the creation of the joint tenancy with right of survivorship in a certificate of deposit, as shown by the signature card, constitutes prima facie evidence of an inter vivos gift of an undivided one-half interest in the proceeds, with a contingent right in the donee to the whole fund. See, *e. g., Dzierski Estate*, 449 Pa. 285, 288–89, 296 A.2d 716, 718 (1972); *Stanger v. Epler*, 382 Pa. 411, 414, 115 A.2d 197 (1955).[10] Thus, had nothing more happened in the case at bar than the purchase of the certificate of deposit, Phillip Cost would have held an undivided one-half interest in that certificate at his death, and this interest would have been subject to his widow's election

---

**10.** It is, of course, true that both donative intent and "such actual or constructive delivery to the donee . . . as to invest in the donee so much dominion and control of the subject matter of the gift as is consonant with a joint ownership or interest therein," *Martella Estate, supra*, 390 Pa. at 258–59, 135 A.2d at 373 (quoting from earlier cases), are necessary to show a gift. But here there was sufficient prima facie evidence of constructive delivery. See *Parkhurst Estate*, 402 Pa. 527, 531–32, 167 A.2d 476, 479 (1961). See also *Lux Estate, supra*, 480 Pa. at 267, 389 A.2d at 1058; *Brozenic Estate*, 416 Pa. 204, 209, 204 A.2d 918, 921 (1964), and cases cited therein.

under Section 6111. See *Hetrick Estate*, 42 Pa.D. & C.2d 582, 586, 17 Fiduc.Rep. 317, 87 Dauph. 339 (O.C.1967); *Drejko Estate*, 34 Pa.D. & C.2d 233, 14 Fiduc.Rep. 636 (O.C.Phila. 1965); *Hershey Estate*, 10 Fiduc.Rep. 390, 1 Adams 160, 166–68 (O.C.Fulton 1960), and cases cited therein. Appellant's contention, however, as stated above, is that this rule is not applicable because here decedent gave the whole of the interest in the certificate to appellant six days before he died.

A complicating factor in the present case is the use of the power of attorney of November 4 in connection with the gift transaction. The trial court believed that since the power was by its terms revocable, under Section 6111 the decedent as donor of the power of attorney retained "a power of revocation or consumption" over the certificate of deposit. This, however, does not follow. The power of attorney was a standard form prepared by Pittsburgh National Bank and merely established an agency in Suzanne Caletri to deal, by herself, with the bank in all needful respects concerning the identified certificate of deposit. The power enabled her to redeem the certificate without the signature of Phillip Cost, and at the same time protected the bank by means of the indemnification clause from any liability in dealing with Suzanne. The instrument was clearly not intended as a deed of gift, but neither was it a document which would preclude proof of gift by independent means. See Restatement (Second) of Contracts § 242 (Tentative Draft No. 6, 1971). The court below erred in giving it greater significance. If a completed inter vivos gift was here made, as we hold, the power of attorney was exhausted and its revocable character, whatever relevance it may previously have had, could not serve to revoke the gift without the donee's consent. See *LaRocca Estate*, 411 Pa. 633, 641, 192 A.2d 409, 413 (1963); *Thompson v. Curwensville Water Co.*, 400 Pa. 380, 384, 162 A.2d 198, 201 (1960).

We think that a prima facie case of a completed inter vivos gift to Suzanne was made out here. The evidence, recited above, of decedent's intent to give her the entire

amount of money represented by the certificate need not be repeated. As to the element of delivery, the record shows that decedent constituted Suzanne his attorney-in-fact and that she had possession of the proceeds on the next day. Phillip Cost's execution of the power of attorney was, in the circumstances, the most he could do to effect delivery to appellant; [11] Suzanne's redemption of the certificate and the deposit of the proceeds into her own account completed the delivery and consummated the gift, for the donor was thus divested "of all dominion and control." *Martella Estate, supra,* 390 Pa. at 258, 135 A.2d at 373. See *Chiara Estate, supra,* 467 Pa. at 590–92, 359 A.2d at 758–59; *Beniger Estate,* 449 Pa. 373, 377–79, 296 A.2d 773, 776–77 (1972); *Northern Trust Co. v. Huber,* 274 Pa. 329, 331–32, 118 A. 217 (1922). Compare *Eyer Estate,* 455 Pa. 369, 317 A.2d 203 (1974).

Faced with this prima facie case, it was incumbent upon appellee to come forward and prove that no gift was intended,[12] or alternatively, demonstrate that decedent and appellant stood in a confidential relationship, in which case "the normal rules respecting the burden of proof [would] not obtain where there is something in the relationship or circumstances of the donor and the donee that makes it doubtful that the normal presumption [*i. e.,* inference] of a gift has any basis in reality." *Dzierski Estate, supra,* 449 Pa. at 290, 296 A.2d at 718. She failed to do so.[13] Although appellee sought to introduce evidence of a confidential relationship at the hearing, the lower court properly ruled that such evidence would not be heard until appellee amended

11. Cf. *Diskin Estate,* 105 Pa.Super. 519, 161 A. 893 (1932).

12. See *Young Estate, supra,* 480 Pa. at 586, 391 A.2d at 1040; *Chiara Estate, supra,* 467 Pa. at 593, 359 A.2d at 760, and cases cited therein; *Donsavage Estate,* 420 Pa. 587, 595 & n.7, 218 A.2d 112, 118 & n.7 (1966).

13. Similarly, it was for appellee to bring forward evidence that there was here, as in *Montague Estate, supra,* a "secret understanding" that this transfer was not what it appeared to be on its face—an unconditional and absolute gift. Having failed to bring forth such evidence, appellee's reliance on that case is misplaced.

her petition to include such an allegation. No such amendment was ever made, and the record shows that a claim of confidential relationship was expressly abandoned by appellee at the argument before the court below. Thus the court made no finding whatever on the issue. Under these circumstances, little weight should be accorded appellee's argument in this Court that the evidence showed a confidential relationship. In any event what evidence there is in this record bearing on the question cannot be said to be sufficient to raise a "genuine issue of fact." *Young Estate, supra,* 480 Pa. at 586, 391 A.2d at 1040. See generally *Keeney Estate, supra; Scott Estate,* 455 Pa. 429, 316 A.2d 883 (1974).

Decree reversed. Each party to bear own costs.