422 A.2d 826

**In re The ESTATE of Alfred V. SIPE, Deceased.**

**Appeal of Mary DRABIK.**

Supreme Court of Pennsylvania.

Reargued Sept. 30, 1980.

Decided Oct. 31, 1980.

126

128

John J. Klein, Schauffler & Klein, Pittsburgh, for appellant.

Wendell G. Freeland, Richard F. Kronz, Freeland & Kronz, Pittsburgh, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFMANN, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Alfred V. Sipe died on April 30, 1977. At the time of his death there existed a joint tenancy with right of survivorship savings account containing $48,765.77. The account was in the name of the decedent and appellant, Mary Drabik, a friend of the decedent. Approximately two months after decedent's death on June 27, 1977 appellant withdrew the money and closed the account.

On July 2, 1977, Eleanor A. Sipe, executrix of the estate of decedent, filed a petition in the trial court requesting that the court order appellant to turn over to the estate the money from the savings account. After hearing, the trial court entered a decree in favor of the executrix. This appeal followed.

Appellant contends that the trial court erred in concluding that the decedent had not made a valid gift of the monies in the account to her. We agree and therefore reverse the decree.

The trial court concluded that a gift had not been made because the decedent, when he opened the account, filled out the entire signature card himself by signing both his name and the appellant's name and their Social Security numbers on the card. Appellant's failure to sign the joint signature card was "fatal to her case" according to the trial court. We do not agree.

Although this Court has held on numerous occasions that the "[e]xecution of a signature card creating a joint

savings account with a right of survivorship *is sufficient* to establish an inter vivos gift to the joint tenant by the depositor of the funds" and "introduction into evidence of a duly executed joint account signature card shifts the burden of proof to those who seek to bar enforcement of the survivorship terms of the writing," (Emphasis added), *Estate of John C. Bowser*, 485 Pa. 209, 212, 401 A.2d 733, 734 (1979), it is not the law and we have never held that such proof is the only proof which can establish a gift. All of the circumstances must be considered in determining whether a gift was made or whether the joint account was established for some other purpose. *Estate of Cilvik*, 439 Pa. 522, 267 A.2d 836 (1970); *Estate of Sivak*, 409 Pa. 261, 185 A.2d 778 (1962); *Snoder v. Lenhart*, 363 Pa. 371, 69 A.2d 382 (1949); *Reap v. Wyoming Trust Company*, 300 Pa. 156, 150 A. 465 (1930).

Sometime prior to September 17, 1975, decedent had opened a savings account in his own name at a branch of the Union National Bank. On the above date, decedent went to the bank and told an employee of the bank that he wanted to close the account in his own name and open a new account in his name and the name of the appellant into which was deposited approximately $8,000.00, which included the $3,000.00 balance in his old account. Decedent signed a temporary signature card for the account and was given a permanent signature card to be signed by himself and the appellant and returned to the bank. The court found that decedent, not appellant, signed appellant's name on the signature card.

About eighteen months later, on February 20, 1977, decedent, who was about to enter the hospital for surgery, gave the passbook for the joint account to appellant. After his discharge from the hospital about a month later, decedent, who needed care, went to the residence of his nephew Vernon Sipe, which was next door. Decedent died about six weeks later on April 30, 1977. After his discharge from the hospital, decedent was not confined to bed. Although he could not drive himself, he visited the hospital for treat-

ments, went shopping on various occasions and was in the bank where the joint account existed sometime in early April, although he did not transact any business, but was there in the company of his nephew Vernon Sipe, who had business at the bank.

■ The requirements for a gift are intent, delivery and acceptance in all cases. *See Cost v. Caletri*, 483 Pa. 11, 18, ftn. 10, 394 A.2d 513, 517, ftn. 10 (1978); *Wagner v. Wagner*, 466 Pa. 532, 353 A.2d 819 (1976); *Brightbill v. Boeshore*, 385 Pa. 69, 122 A.2d 38 (1956). This is so whether we are concerned with monies, a bank account, a stock certificate, or a horse. Accepting the trial judge's conclusion that the appellant did not sign the signature card herself, the issue remains whether or not a valid gift was established.

■ As to the first requirement for a valid gift–intent– there is no question that the evidence satisfies that requirement. Decedent was not opening a savings account for the first time. He had one in his own name. He specifically asked that that account be closed and a new joint account be opened in his name and the name of appellant. He was given an explanation of the account and a signature card which he signed and returned to the bank. That signature card clearly states that a joint account is being established with the right of either party to withdraw and with the right of survivorship. The only conclusion possible is that the decedent intended to make a gift.

Appellee seems to attach great significance to the lower court's finding that appellant did not sign the signature card. It cannot be overemphasized that appellant's signing or not signing of the signature card does not control the disposition of this case. Signing the card would have shifted the burden of proof to the challenger that joint ownership was not created. Not signing the card merely means that we must consider all the circumstances in determining whether a joint account was intended to exist and whether it does exist. It is our task to decide whether the requirements of the law pertaining to the creation of gifts have

been met, not whether the parties to this intended gift have complied with the rules and regulations designed for the legitimate protection of Union National Bank, not a party to this dispute.

In addition to donative intent, the law of gifts also requires acceptance of the gift, but acceptance is presumed:

[W]hen the gift is beneficial the presumption is that the gift is accepted by the donee. This would, indeed, not be contrary to the doctrine that [a] gift is a bilateral transaction, if the rule were confined to those cases where the donee is made cognizant of the gift, and the only thing lacking were proof of an express acceptance on his part. In such circumstances it would be a fair implication of fact that the donee, in absence of express renunciation, did accept.

Brown, *Law of Personal Property* (3d ed., Raushenbush rev., 1975) § 7.14. The acceptance requirement was met when appellant received the passbook from decedent. It has never been required that a donee sign a document acknowledging acceptance, which is what appellee's position would dictate.

Finally, the law of gifts also requires a delivery. Without reaching the question of whether a delivery was effected when decedent gave the signature card to the bank, it is clear that delivery was made when decedent gave the passbook to appellant.

Appellee has suggested that this was a convenience account. There is almost no evidence so to indicate. Evidence to establish that such a joint account was a convenience account is not sufficient unless the evidence is clear, precise and convincing. *Estate of Lux*, 480 Pa. 256, 389 A.2d 1053 (1978); *Estate of Cilvik*, 439 Pa. 522, 267 A.2d 836 (1970); *Fenstermaker Estate*, 413 Pa. 645, 198 A.2d 857 (1964). The evidence must not be general but must be detailed and specific as to when and under what circumstances the decedent manifested that the account was a convenience account. Such evidence is lacking in this case.

On February 20, 1977 the decedent who was about to enter the hospital gave the passbook for the joint account to the appellant. There is no evidence that he did so for convenience purposes. The decedent was discharged from the hospital on March 20, 1977. Instead of returning to his residence, he went to the residence of his nephew next door Vernon Sipe and Eleanor Sipe the executrix. From March 20, until April 17, appellant was out shopping on several occasions and was even at the bank on one occasion in early April. At no time until the seventeenth of April did he request the return of the passbook from appellant. On April 17, his nephew, Vernon Sipe, found an interest statement from the bank and told the decedent that the passbook would be needed so that decedent's income tax returns could be completed. The decedent asked Mary Drabik to return the passbook. Vernon Sipe testified that the only reason given by the decedent for wanting the passbook was so that his tax returns could be completed. Vernon Sipe specifically testified that the decedent expressed no other purpose although Vernon "thought" the decedent may have wanted to change the account. Vernon's wife, Eleanor, the executrix, testified that the decedent told her that she would be well taken care of and that he wanted to change the account. No withdrawals were ever made from the account and there was no evidence that the decedent himself desired to make any withdrawals for any of his needs or that he ever asked the appellant before or after he was out of the hospital to withdraw any funds for his needs.

The above evidence comes nowhere near the clear and convincing evidence required to establish a convenience account.

 Because the absence of appellant's signature on the card was "fatal to her case", the trial court refused to speculate whether "the gift if any, was revoked when the decedent recovered possession of the book and retained it until he died." After reviewing the record, we conclude that the gift was not revoked when the passbook was returned so that his tax returns could be completed. *See Wagner v.*

*Wagner, supra; Estate of Keeny,* 465 Pa. 45, 52–53, 348 A.2d 108, 112 (1975).

The only conclusion warranted on the basis of the undisputed facts, coupled with the facts as found by the trial court, is that the decedent made a valid gift to the appellant.

The decree of the trial court is reversed and a decree entered in favor of appellant. Each party to pay own costs.

ROBERTS, J., files a dissenting opinion in which O'BRIEN, C. J., joins.

ROBERTS, Justice, dissenting.

This record is clear that appellant–claimant Mary Drabik's "signature" appeared on the bank's signature card only by the decedent's act of tracing her name on the card. Thus inapposite is the rule that "[i]ntroduction into evidence of a duly executed joint account signature card shifts the burden of proof to those who seek to bar enforcement of the survivorship terms of the writing and they must meet that burden with clear, precise and convincing evidence." *Bowser Estate,* 485 Pa. 209, 212, 401 A.2d 733, 734 (1979). Accord, e. g., *Lux Estate,* 480 Pa. 256, 389 A.2d 1053 (1979).

Nonetheless, in the absence of statutory or case law authority, the majority places upon appellee–executrix the burden to show by "clear, precise and convincing evidence" that the savings account of decedent Alfred Sipe belongs in decedent's estate. Surely, as every estate practitioner and orphans' court judge must know, the majority has misplaced the burden of proof. Until today, it has been black-letter law in the Commonwealth that where, as here, no duly executed signature card exists, "[a] claim of a gift *inter vivos* against the estate of the dead must be supported by clear and convincing evidence: *Leadenham's Est.,* 289 Pa. 216 [, 137 A. 247]; *Brightbill v. Boeshore,* 385 Pa. 69 [, 122 A.2d 38.]" Hunter, III Pennsylvania Orphans' Court Commonplace Book § 2(a) (1959). Accord, e. g., *Sivak Estate,* 409 Pa. 261, 185 A.2d 778 (1967); *Scanlon Estate,* 25 Fid.Rep. 33 (Mont.), aff'd, 464 Pa. 236, 346 A.2d 303 (1975).

That burden has in no respect been met. The absence of appellant–claimant's own valid signature makes it clear that delivery did not occur. The signature card embodying the contract between the bank and its depositor appears below.

Clearly appellant–claimant did not sign the signature card. Therefore, she was not an "undersigned" entitled to withdraw from the account.

"The essence of delivery of a gift is relinquishment by the donor of dominion and control of the subject matter of the gift. *See* Brown, Personal Property § 39 (1955)." *Wagner v. Wagner*, 466 Pa. 532, 539, 353 A.2d 819, 822 (1976). With only decedent's sham, traced "signature" of appellant's name on the bank's card, the bank had every legal right to refuse to pay appellant the savings account funds. Decedent, therefore, was at all times exercising complete control over the funds and appellant was never in a position to

exercise dominion. On a record failing to disclose a completed gift *inter vivos,* nothing could have passed to appellant. See *Scanlon Estate,* supra. As the Orphans' Court Division of the Court of Common Pleas of Allegheny County concluded, "no joint account ever existed. [Appellant] never signed the signature card. The alleged agreement between the two joint owners and the bank failed because one of the joint owners never became a party to it." These findings are uncontradicted on the record and may not be disturbed.

The decree of the orphans' court, which properly applied well–settled legal standards and gave appropriate weight to all the facts, correctly rejected the claim of appellant to the savings account of decedent. Its decree should now be affirmed, just as it should have been affirmed on the first argument of this case thirteen months ago.

O'BRIEN, C. J., joins this dissenting opinion.