591 A.2d 1047

**Richard C. FUISZ, Appellee,**

v.

**Margaret FUISZ, Appellant.**

Supreme Court of Pennsylvania.

Argued April 9, 1991.

Decided May 21, 1991.

Reargument Denied July 9, 1991.

Thomas P. Stitt, Easton, Roland Morris, Philadelphia, for appellant.

Cregg E. Mayrosh, Hellertown, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

This is an appeal, by allowance, from an order of the Superior Court which affirmed a final decree in equity issued by the Court of Common Pleas of Northampton County. *Fuisz v. Fuisz*, 386 Pa.Super. 591, 563 A.2d 540 (1989). The decree granted specific performance for a conveyance of real property. The appellant, Margaret Fuisz, is the mother of the appellee, Richard C. Fuisz. Appellee commenced this action against appellant in 1987 seeking specific performance of an alleged oral agreement to convey land. The facts from which this case arose are as follows.

Appellant and her husband, Anton Fuisz, purchased fifty acres of land in Lower Nazareth Township during the 1930's. The land contained a farm house that became their family dwelling. Years later, during the 1960's, appellant and her husband gave various parcels of this land to their two sons, Richard and Robert Fuisz. These gifts were

accomplished by means of fully executed deeds of conveyance. In 1972, appellee built a separate house on the land. The house cost between $40,000.00 and $70,000.00, and was built on acreage not previously deeded to him, i.e., on land still owned by his parents. Construction was accomplished with the full knowledge and approval of his parents. Appellant assisted appellee in his dealings with various contractors and suppliers during the course of construction. The land affected consisted of a parcel of approximately two and one-half acres. When the house was completed, appellee used it as his personal residence for approximately seven years. In 1979, appellee became divorced from his wife, and, since that time, he has not lived in the house. His ex-wife and children continue, however, to reside there.

Appellee was eventually offered a deed for the parcel. This occurred in 1982, but appellee did not accept the deed because it did not include a right-of-way to his parents' driveway or the use of their barn. He preferred not to have to build his own driveway and storage facilities. Due to family disharmony, no further offers to convey were made after 1982.

Property taxes on the parcel have always been paid by appellee's parents, rather than by appellee, and they have retained exclusive possession and control over a portion of the two and one-half acre parcel which contains a rental cottage. No rent has ever been charged to appellee for use of the land. Appellee paid for his own utilities and for certain other expenses directly associated with the house. Maintenance on the house and lawn was performed mostly by a company that appellee owned, though a maintenance man employed by appellant may have mowed the lawn on certain occasions.

Appellee's father died in 1982, leaving appellant solely in control of the legal title. Because appellee did not have title, he commenced the present action seeking to obtain it through a decree of specific performance.

Appellee's action was based upon an alleged oral contract to convey the land. Appellee, a highly educated and suc-

cessful physician and business entrepreneur, asserted that he did much for his parents through the years, such as giving them money and supplying them with luxury automobiles. He claimed, therefore, that the consideration for the contract consisted of love and affection. In the Court of Common Pleas, the chancellor found that the evidence was insufficient to prove such a contract, but, nevertheless, awarded specific performance on the basis that a parol gift of the property had been established.

Appellee had not alleged the existence of a gift in his complaint. In her answer to the complaint, appellant alleged that, before becoming alienated from her relationship with appellee, she had offered on various occasions to make a gift of the property but that appellee declined the offers.

Appellant maintains that, if appellee wishes to do so, he is welcome to remove his house from her land. Also, appellant is apparently not opposed to simply leaving the house in its present location and allowing appellee's ex-wife to continue living there. The parties have stipulated that it would indeed be possible to move the house. They have also stipulated that the value of the house exclusive of the land is $81,000.00, and that the land and rental cottage together are valued at $47,200.

The Superior Court affirmed the chancellor's finding that a gift was established. We disagree, and accordingly reverse.

■ The requisites for the creation of a valid parol gift of land are well established. In *Yarnall Estate*, 376 Pa. 582, 590, 103 A.2d 753, 758 (1954), we set forth the following requirements: 1.) evidence of the gift must be direct, positive, express, and unambiguous; 2.) possession of the land must be taken at the time or immediately after the gift is made, and such possession must be exclusive, open, notorious, adverse, and continuous; and 3.) the donee must make valuable improvements on the property for which compensation in damages would be inadequate. Accord *Rarry v. Shimek*, 360 Pa. 315, 62 A.2d 46 (1948).

■ Thus, *Yarnall* clearly established that the elements of a parol gift of land must be established by evidence which is direct, positive, express, and unambiguous. Underlying this requirement is a view that delivery of a deed, as is generally necessary under the Statute of Frauds, 33 P.S. § 1, is the normal and proper means for conveying title to real property. Only where it is abundantly clear, leaving nothing to speculation, that a parol gift has occurred does *Yarnall* permit recognition of the gift. The stringent requirements of *Yarnall* exist to encourage persons to transfer properties in the proper manner, by means of deeds, and to foreclose the claims of those who might otherwise assert questionable claims of ownership in others' properties.

■ Further, where, as in this case, the alleged parol gift of land is between parent and child, evidence of an *even more clear and weighty nature* is required than is necessary where the alleged gift was between unrelated persons. *Yarnall Estate*, 376 Pa. at 589–90, 103 A.2d at 758; *Rarry v. Shimek*, 360 Pa. at 318, 62 A.2d at 48.

■ Applying these standards to the present case, it is clear that appellee failed to satisfy his heavy burden of proving that a parol gift was made. The record simply does not contain evidence that could be characterized as direct, positive, express, and unambiguous, and, as stated, evidence of an even more clear and weighty nature would be necessary to establish that appellee received the gift in question, since the alleged gift was between parent and child. Appellee has simply failed to meet this burden of proof, for, at best, his evidence must be characterized as indirect, inferential, and ambiguous.

In reaching this decision, we are mindful that the scope of appellate review in a case such as this is quite limited. As stated in *Sack v. Feinman*, 489 Pa. 152, 165–66, 413 A.2d 1059, 1066 (1980), "[n]ormally, appellate review of equity matters is limited to a determination of whether the chancellor committed an error of law or abused his discretion." A final decree in equity will not be disturbed unless it is

unsupported by the evidence or demonstrably capricious. *Id.*

The present record, however, is devoid of direct and unambiguous evidence that a gift was made. The chancellor's finding of a gift was based largely on inferences. No one, not even appellee, testified that a gift had actually been completed. Rather, the testimony was that the parties expected through the years that the land would eventually be given to appellee. Essentially, a gift was inferred from the fact that appellee constructed a house on his parents' property with the expectation that the property would someday be his own.

Obviously, when one builds a house on property that is not his own, a substantial risk is taken that title to the property will never be obtained. This is so even where, as in this case, the owner consented to the construction. The making of improvements on lands owned by others is a risky undertaking, and certainly does not in itself establish ownership. As stated in *Yarnall,* supra, the making of improvements is only one of the elements necessary to establish a parol gift of land.

Appellant testified that, before becoming alienated from appellee in 1982, she had been willing to give him the land at any time he might have requested it. She further testified that, in 1972, when the house was built, she told appellee that "he could take the land whenever he wished," but that appellee did not accept ownership at that time because he thought he might be getting a divorce or because he wished to keep the land in one piece "like a Kennedy compound." Appellee denies that his refusal to accept a conveyance in 1972 was attributable to the foregoing reasons, asserting instead that he did not wish to complete a conveyance at that time for reasons related to his father's ill health. He nevertheless admits that he "deferred taking a conveyance" until his father's death in 1982.

Appellant testified that, in 1982, she told appellee that "he should have [the land] surveyed and take as much land

as he wants." Appellee did have the land surveyed, but then declined to accept a deed that was offered to him. As noted earlier, he was dissatisfied because the deed, as prepared, did not grant him the use of his parents' driveway and barn. While the statements made by appellant in both 1972 and 1982 would certainly have provided a basis for appellee's expectation that he would eventually receive the land, they nevertheless fell short of an express declaration of an immediately effective gift.

The intention of the landowner to make a gift at some time in the future and the expectation of the potential donee that he will receive such a gift are not substitutes for an actual gift. Such intentions and expectations have no effect upon present ownership. Rather, a transfer of ownership by gift requires that there be a present donative intent, not merely an intention to make a gift at some future time. *Rogan Estate*, 404 Pa. 205, 212, 171 A.2d 177, 180 (1961); *Wagner v. Wagner*, 466 Pa. 532, 537, 353 A.2d 819, 821–22 (1976) (intention to make an immediately effective gift is essential).

In 1982, appellee's parents offered to make a gift of the land, yet appellee declined to accept the deed. The chancellor viewed this as lending support to an inference that a gift of the land had been made at some time prior to 1982. We do not agree. When one offers to convey land by deed, it cannot be presumed that the proposed recipient already owns the land through a prior gift. Nothing in the record indicates that the parties viewed delivery of the deed to be a superfluous act, i.e., a mere affirmation of a previous parol gift. All of appellant's previous gifts of land to appellee had been effected through the delivery of deeds. Appellant clearly viewed delivery of a deed as the act by which she would someday make a gift of the present parcel. Significantly, appellee's complaint did not even allege that a parol gift had been made. In fact, appellee admitted that until 1982 he deferred taking a conveyance of the property.

Acceptance by the donee is a necessary element of a valid gift. *Sipe Estate*, 492 Pa. 125, 130–31, 422 A.2d 826,

828 (1980); *Wagner v. Wagner,* 466 Pa. at 537 n. 5, 353 A.2d at 821 n. 5. The record demonstrates that from 1972 through 1982 appellee declined to accept a conveyance of the property. If appellant's actions during this period were to be construed as an attempt to make a parol gift, it is evident that appellee failed to make a clear and unambiguous acceptance.

In short, the evidence simply fails to meet the *Yarnall* standards as to proof of a parol gift of land. The evidence relied upon by the chancellor in finding that a gift had been made was indirect, inferential, and ambiguous. Such evidence falls substantially short of what is required to establish a parol gift of land between a parent and child. The decision of the Superior Court upholding the chancellor's finding must, therefore, be reversed.

Order reversed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent. Mr. Justice Flaherty, writing for the majority, sets forth the correct standard enunciated in *Yarnall Estate,* 376 Pa. 582, 103 A.2d 753 (1954), for assessing the creation of a valid *parol* gift of land. However, he then finds that there was no *parol* gift of land because appellee, Richard C. Fuisz, did not accept a *written* instrument confirming the conveyance of the property on those occasions when his mother, appellant, Margaret Fuisz, expressly made the gift of land to him. This makes no sense.

The present record is *not* "devoid of direct and unambiguous evidence that a gift was made." Maj. op. at 355. On the contrary, there is abundant *parol* evidence of a gift. Appellant testified in clear and certain terms that she had given the property to her son.[1] Although I agree that "[a]cceptance by the donee is a necessary element of a valid gift," maj. op. at 355, I disagree that on the facts of this

1. Appellant testified as follows:

case there was no clear and unambiguous acceptance made by the appellee as donee. Appellee built a house on the property with his own money when it was given to him in 1972, and he treated the property as his own thereafter. In fact, the property settlement agreement he entered into with his ex-wife permitted her to live there for as long as she wished. Documentation of the conveyance was simply not an essential element of the gift transaction between mother and son.[2] Thus, I would find that a valid gift was made *and* accepted.

Accordingly, I would affirm the order of the Superior Court which affirmed the order of the Court of Common Pleas of Northampton County.

A ... "I've given [the property] to him twice."

\* \* \* \* \* \*

Q Okay. But for this ill-treatment that you say he's been giving you, would you have conveyed this property to him?
A Before that?
Q Yes.
A I was willing. Didn't I prove it when *I gave it to him?* Didn't I prove it?

\* \* \* \* \* \*

A Well, I told you that I let him have it twice, but I don't remember—*I did tell you that I gave it to him twice* ...
Deposition of Margaret Fuisz at 10, 28, and 34 (May 5, 1987) (emphasis added).
A ... *I gave him that land.* I offered that land to him a number of times. And the last time when he had it surveyed, I told him he could take as much as he wanted.
Notes of Testimony at 17 (Jan. 27, 1988) (emphasis added).

2. Appellee testified that he did not want a deed to the property in the 1970's because he felt that such graphic evidence of the conveyance of the property would endanger the well-being of his father who was suffering from a terminal illness and had not been told the seriousness of his condition. Appellant testified that her son did not want a deed to the property at that time because he was having marital difficulties and did not want the property to be subject to a property settlement with his wife. Regardless of which evidence is more credible, it is clear that a gift was made and accepted. It was simply a matter of convenience for the parties not to formalize the transaction in writing.